IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE CRISTOBAL CARDONA, | : | CIVIL NO. 3:CV-11-0054 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| B.A. BLEDSOE, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Jose Cristobal Cardona ("Plaintiff" or "Cardona"), an inmate presently confined at the United States Penitentiary Lewisburg ("USP Lewisburg") in Lewisburg, Pennsylvania, initiated the above action pro se by filing a Complaint under the provisions of 28 U.S.C. § 1331. (Doc. 1.) He simultaneously filed an application for leave to proceed in forma pauperis (Doc. 2) and an authorization (Doc. 3) to deduct funds from his inmate account in order to satisfy the filing fee for a civil rights action.

Although Cardona filed an outdated authorization form that was in place when the filing fee for a civil rights action was only $150.00, rather than the current $350.00, on January 7, 2011, the Clerk of Court issued an Administrative Order to the Warden of USP Lewisburg stating that the filing fee is $350.00 and directing the commencement of the collection of funds from Cardona's account to satisfy the filing fee. (Doc. 5.) Accordingly, since that time, funds have been collected from Cardona's inmate account in the amount of $81.22 (see Docs. 6-9, 11), which leaves a balance of $268.78 to be paid toward the $350.00 filing fee.

For the reasons set forth below, Cardona's motion for leave to proceed in forma pauperis will be denied pursuant to the Three Strikes Rule, codified at 28 U.S.C. § 1915(g), and he will be directed to pay the balance remaining on the $350.00 filing fee within twenty-one (21) days from the date of this Order, or this action will be dismissed.

I. **Background**

   A. **Allegations of the Complaint**

In his Complaint, Cardona names as Defendants Warden B.A. Bledsoe; Captain B. Trate; Assistant Warden A.W. Hudson; Corrections Officer C. Anderson; Lieutenant Flemming; Federal Bureau of Prisons ("BOP") Administrative Remedies Administrator Harrell Watts; BOP Regional Director J.L. Norwood; and BOP Director Harley Lappin. (Doc. 1 at 2.)

He first alleges that Defendants Bledsoe and Lappin have conspired to implement Program Statement 5217.01, which allows for the existence of a Special Management Unit ("SMU") at USP Lewisburg. (Doc. 1 at 8.) He explains that "inmates are forced to participate in this program under the threat of corporal punishment and use of force" and that Warden Bledsoe has authorized his staff to use "Police Statement 5566.06 excessive use of force and application of restraints to those who refuse to accept a housing assignment." (Id.) Cardona alleges that the SMU Program fails to comply with the Administrative Procedures Act Notice and Comment Requirements. (Id.)

Cardona alleges that part of the SMU Program is the practice of double celling, which he states is the main cause of violence at the Program in that there have been hundreds of

2

assaults among cell mates, hundreds of "staged gladiator type fights", forty (40) murders among cell mates, eight (8) sexual assaults among cell mates, and six (6) stabbings and assaults against officers stemming from the forced double celling. (Id.) Cardona further alleges that, despite the murders and violence, Defendants continue with the practice of forced double celling and that it affects inmates psychologically and is the main cause of violence. (Id.) He states that the practice is a "safety hazard" and claims that USP Lewisburg is the only high security lockdown facility that practices the forced double celling of inmates with security concerns. (Id. at 8-9.) He claims that Defendants take pleasure in this "prolonged 'experimental' psychological torture" and that Defendants Lappin, Norwood, and Watts "further the conspiracy by their failure to intervene, train or supervise despite of [sic] several murders and assaults stemming from such practice of forced double celling these Defendants are responsible for the (4) murders etc. . . ." (Id. at 9.) Cardona claims to have exhausted his "double celling without adequate living space claim." (Id.)

Cardona's next claim is that, upon his arrival at the SMU, he was assigned to Cell #205 in D-Block with inmate Manriquez, and that, even though he told the officer that the cell was not big enough for the two of them, and that he was not welcome by Manriquez, the officer, Defendant C. Anderson, and Defendant Flemming, took Cardona to the shower area to "talk the issue over". (Id.) He alleges that when he told Anderson and Flemming that he refused to participate in the SMU Program and asked to be placed in "the hole/segregation," Anderson and Flemming told him that if he did not go into the cell with Manriquez, he would be placed in four-point restraints. (Id. at 9-10.) He alleges that he was therefore forced to go

3

into the cell with Manriquez, which he claims led to a "gladiator-type fight" that was staged by Anderson and Flemming. (Id. at 10.) Cardona claims that he was attacked by Manriquez and had no other choice but to "fight like a gladiator for his life." (Id.) He claims that Anderson and Flemming took pleasure in his pain and inflicted additional pain by applying chemical agents. (Id.) Cardona alleges that Anderson then wrote a "false incident report" against him to cover up the misconduct.[1] (Id.) He states that he suffered a dislocated shoulder and broken ribs, and that he has exhausted his administrative remedies regarding this claim. (Id.)

In his next claim, Cardona alleges that, he was forced to double cell with an inmate in Z-Block who was awaiting transfer to the BOP's Administrative Maximum facility in Florence, Colorado ("USP Florence ADMAX") after the inmate assaulted a corrections officer. (Id.) Cardona explains that the inmate was being subjected to harsh security measures, and that, as a result, he and the inmate were subject to daily strip searches on the way to and from recreation per the order of Defendant Trate with no legitimate penological interest at stake, but instead for the purpose of harassment. (Id.) He claims that they were singled out for this treatment and for psychological torture while other similarly situated inmates on Z-Block were not. (Id.)

In addition, Cardona complains that he has been on lockdown 23/7 since June 19,

---

[1] Cardona filed a petition for writ of habeas corpus under the provisions of 28 U.S.C. § 2241 in which he claims that his right to due process was violated in the disciplinary proceedings that followed the misconduct described in the instant Complaint and for which he was found guilty of fighting and sanctioned with a loss of good conduct time. The petition is pending at Civil No. 4:10-CV-2269.

2009, and that he has been forced to eat his meals "on an asbestos contaminated floor", and he is suffering breathing problems and chest pains. (Id. at 11.) He also complains about the temperature regulation in his cell, and specifically that there is no air conditioning in summer and improper heating in the winter. (Id.) He further complains that the recreation cages are too small and that he has suffered injuries from fights with cell mates. (Id.)

Finally, Cardona alleges that USP Lewisburg does not have a SMU for inmates who refuse double celling and that forcing inmates into compliance with this practice violates the Eighth Amendment. (Id.)

**B.    Supplement to the Complaint**

On April 19, 2011, Cardona filed a document entitled "Plaintiff's Amendment to His Initial Complaint." (Doc. 10.) Cardona is not required to seek leave of court to file an amended complaint inasmuch as his Complaint has not yet been served and no responsive pleading has been filed. *See* Fed. R. Civ. P. 15(a). However, in the document he has filed, Cardona seeks to add claims to his Complaint based on events that occurred **after** the date of the Complaint, and thus he is supplementing rather than amending his Complaint and would be required to seek leave of court to file this supplemental pleading. *See* Fed. R. Civ. P. 15(d). We will construe the filing as a motion seeking leave to supplement the Complaint and consider Cardona's supplemental claims in examining his Complaint herein for purposes of determining whether the Three Strikes Rule will be applied.

In his supplement to his Complaint, Cardona alleges that he informed psychologists on staff at USP Lewisburg, Mr. Karpag and Ms. Mink, that he is suffering from psychological

5

problems from being double celled without adequate living space and that Karpag and Mink, who he seeks to add as Defendants, ignore his requests for health care. (Doc. 10 at 1.) Cardona further complains that Defendants Bledsoe, Norwood, and Lappin have failed to provide him with adequate mental health care at the SMU inasmuch as staff psychologists conduct "minute long cell front consultations" in the presence of cell mates and other inmates rather than in private. (Id. at 1-2.) Cardona also complains that he is "suffering unbearable psychological trauma from brain concussions suffered from cell fights stemming from double celling without adequate living space and staged gladiator type fights." (Id. at 2.) Cardona alleges that he is "imminent danger of psychological injury." (Id.)

## II. Discussion

Under § 1915(g), a federal civil action by a prisoner proceeding in forma pauperis is barred if he or she:

> has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Two (2) previous lawsuits filed by Cardona in this Court have been dismissed under the Three Strikes provision of § 1915(g). See Cardona v. United States, Civil No. 4:CV-10-1826, Doc. 12 (M.D. Pa. Sept. 28, 2010) (McClure, J.); Cardona v. Lappin, Civil No. 4:CV-

6

10-1460, Doc. 6 (M.D. Pa. Jul. 22, 2010) (McClure, J.)[2]. In the Memoranda dismissing those cases, it was observed that a search of Westlaw revealed that Cardona had, on at least three (3) previous occasions, initiated civil rights actions that were dismissed as frivolous. (See id.) The Memoranda explained that, in Cardona v. Menifee, 258 Fed. Appx. 642 (5th Cir. 2007), the United States Court of Appeals for the Fifth Circuit referred to Cardona's previous strikes in the following explanation of its denial of his request to proceed in forma pauperis:

> The district court's dismissal of Cardona's action and this court's dismissal of his appeal count as two strikes under 28 U.S.C. § 1915(g). See Adepegba v. Hammons, 103 F.3d 383, 387-88 (5th Cir.1996). The district court's dismissal and this court's dismissal of the appeal in Cardona v. Tuite, No. 07-30041, 2007 WL 4371967 (5th Cir. Dec. 10, 2007) (unpublished), also count as two strikes under § 1915(g). Id. As Cardona has now accumulated at least three strikes, he is barred from proceeding in forma pauperis pursuant to § 1915 while he is incarcerated or detained in any facility unless he is under imminent danger of serious physical injury. See § 1915(g).

258 Fed. Appx. 642.

Based on the foregoing, Cardona is barred from proceeding in forma pauperis in the instant action. Cardona admits in his application for leave to proceed in forma pauperis that he has, on three or more occasions, initiated lawsuits in a court of the United States that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. (See Doc. 2 ¶ 3.) However, in a section within his Complaint labeled "Emminent

---

[2]By Order dated March 3, 2011, Cardona's appeal from the dismissal of his action filed at Civil No. 4:CV-10-1460 was dismissed by the United States Court of Appeals for the Third Circuit as a result of his failure to pay the filing fee as directed by that Court in its February 1, 2011 Order. (See Cardona v. Lappin, Civil No. 4:CV-10-1460, Doc. 20.)

Danger,"[3] he alleges that he is subject to the "imminent danger" exception to the "three strikes" rule set forth in § 1915(g). (See Doc. 2, In Forma Pauperis Application, at 1-2; Doc. 1, Complaint, at 4-7.)

The United States Court of Appeals for the Third Circuit has concluded that, for the "imminent danger" exception to be applicable, the District Court must find that the requisite imminent danger of serious physical injury existed at the time the complaint or the appeal is filed. See Abdul-Akbar v. McKelvie, 239 F.3d 307, 312 (3d Cir. 2001)(en banc), cert. denied, 533 U.S. 953 (2001). Thus, past danger is insufficient; "[s]omeone whose danger has passed cannot reasonably be described as someone who 'is' in danger, nor can that past danger reasonably be described as 'imminent.' " Id. at 313. Instead, " '[i]mminent' dangers are those dangers which are about to occur at any moment or are impending." Id. at 315. Therefore, the "imminent danger" exception is available "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate." Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002).

Cardona alleges that he is in imminent danger of serious physical harm because he is being "unlawfully confined at the Special Management Unit" where Defendants continue with a practice of forced double celling maximum security inmates with "management and security concerns" within small cells twenty-four (24) hours per day, seven days a week.

---

[3]It is apparent that Cardona intended for this attachment to be included with his application for leave to proceed in forma pauperis as he referred to it in his application (see Doc. 2 at 2 (b)), but the attachment instead was included with his Complaint.

(Doc. 1 at 4.) He claims that this practice is "the main cause of violence at this institution" and has resulted in "over 100's [sic] of brutal assaults among cellmates, over (6) murders among cellmates stemming from the forced double celling." (Id.)

Cardona describes the "imminent danger" he faces as follows:

> The plaintiff is in imminent danger of either: (1) being the next person to kill a cell mate in this institution to which then he will be facing the death penalty pursuant to 18 USC § 1111; (2) being the next murder victim from a cell fight; (3) being the next assault victim from a cell fight; (4) being the next suicide victim from psychological torture of double celling.

(Id.)

Cardona explains that the forced double celling affects his psychological and physical well-being. (Id. at 4-5.) He argues that, pursuant to the holding of the United States Court of Appeals for the Third Circuit in Gibbs v. Cross, 160 F.3d 962 (3d Cir. 1998), "inmates ought to be able to complain about 'unsafe, life threatening conditions in their prison' without waiting for something to happen to them." (Id. at 5.) He also cites Andrews v. Cervantes, 493 F.3d 1047 (9th Cir. 2007), for its holding that "a prisoner who alleges that prison officials continue with a practice that has injured him or other similarly situated in the past will satisfy the 'ongoing danger' standard and meet the imminence prong of the three-strikes exception." 493 F.3d at 1056-57. (Id.) In addition, Cardona challenges the constitutionality of the Three Strikes Rule and alleges that it is "null and void because it is a stealthy encroachment of the Plaintiff's right of access to courts." (Id. at 5-6.) He asks the Court to construe his allegations of imminent danger under liberal pleading standards and in his favor in accordance with Gibbs v. Roman, 116 F.3d at 86 (3d Cir. 1998). (Id. at 7.)

With regard to Cardona's arguments, we observe that, Cardona accurately states that this Court should construe the allegations in the Complaint in favor of the plaintiff. See Gibbs v. Cross, 160 F.3d at 965; Gibbs v. Roman, 116 F.3d at 86. While his point is well taken that an inmate who is in danger need not wait for something to happen before complaining, an inmate who has accumulated three strikes must demonstrate that the danger of serious physical harm that he faces is *imminent* and is faced as of the time of filing the complaint. See Abdul-Akbar, 239 F.3d at 307. Moreover, this Court sits in the Third Circuit, not the Ninth Circuit, and therefore, the "ongoing danger" standard articulated by the Ninth Circuit in Cervantes has no application here. Finally, Cardona's argument that the the Three Strikes Rule is unconstitutional lacks merit in that the Abdul-Akbar Court held that "[t]he ability to proceed I.F.P. is not a constitutional right." Abdul-Akbar, 239 F.3d at 316.

Having clarified the applicable standard, in assessing whether Cardona has demonstrated that he is in imminent danger of serious physical harm as of the time of filing the Complaint, we first observe that he previously sought to pursue the first two claims in his Complaint stemming from the events that occurred while he was double celled with inmate Manriquez, and the events that occurred when he subsequently was double celled with another inmate in Z-block who was awaiting transfer to USP Florence ADMAX, in his civil rights case filed at Civil No. 4:CV-10-1460 that was dismissed under the Three Strikes Rule by Order dated July 22, 2010. (See Cardona v. Lappin, Civil No. 4:CV-10-1460, Doc. 6 (M.D. Pa. Jul. 22, 2010).) As the late Judge McClure indicated in his Memorandum explaining his decision to apply the Three Strikes Rule in the case then before him, where

Cardona clearly no longer was housed with those inmates, and did not articulate a specific danger he faced in his cell assignment as of the time of filing his complaint, he failed to present sufficient allegations of an imminent danger of serious physical harm to forestall application of the Three Strikes Rule. (Id.) The same is true here; despite Cardona's allegations about the dangers of double celling generally, he fails to identify a threat to his physical safety posed by his current living situation that is anything other than speculative in nature.

We note that, in an apparent attempt to identify a specific threat to his physical well-being, Cardona claims in the Supplement to his Complaint that he is in imminent danger of "psychological injury" because he finds the mental health consultations in the SMU to be inadequate. (See Doc. 10.) However, there is no exception to the Three Strikes Rule based upon a showing of an imminent danger of a serious *psychological* injury; rather, to fall within the exception to the Three Strikes Rule, Cardona must show an imminent danger of serious *physical* injury. Cardona fails to demonstrate how the allegedly inadequate mental health care he is receiving at USP Lewisburg in the form of "cell front consultations" places him in imminent danger of serious physical injury.

Moreover, in the instances where Cardona has attempted to identify threats to his physical well-being, he has failed to identify any *imminent* threats of serious physical injury. He claims in his Supplement to his Complaint that he "is suffering unbearable psychological trauma from brain concussions" from cell fights that resulted from double celling (see Doc. 10 at 2), but he makes no specific allegations as to the circumstances surrounding these

11

events, and therefore he fails to articulate how these past events pose an imminent danger of serious physical injury as of the time of filing the Complaint.

Cardona also alleges that, since June 2009, he has had to eat on "an asbestos-contaminated floor" and has been forced to live without air conditioning in summer, and with inadequate heating in winter. (Doc. 1 at 11.) He alleges that he suffers from breathing problems and chest pains. (Id.) He also complains abuot the small size of the recreation cages. (Id.) The fact that Cardona alleges that he first became subject to these conditions in June 2009, but he filed the instant Complaint in January 2011, nearly two (2) years later, suggests that his circumstances do not present a "genuine emergency" that warrants application of the imminent danger exception to the Three Strikes Rule.  See Lewis, 279 F.3d at 531. Moreover, other courts have found similar allegations to be insufficient to overcome the application of the Three Strikes Rule. See Brown v. Beard, 2010 WL 4810615, at *3 (W.D. Pa. 2010) (citing Polanco v. Hopkins, 510 F.3d 152, 155 (2d Cir. 2007) (holding that District Court did not err in determining that plaintiff's allegations did not support a determination that he was in imminent danger of serious physical injury with respect to alleged health risks associated with exposure to mold); Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (holding that prisoner's allegations of exposure to inclement weather that could be harmful to his medical condition were insufficient to establish imminent danger)).

In addition, we note that, in his Complaint at Civil No. 4:CV-10-1460, Cardona alleged that he faced a danger from asbestos in March 2010 when he was moved to D Block

and saw a sign there warning of asbestos. (Cardona v. Lappin, Civil No. 4:CV-10-1460, Doc. 1 at 9-10 ¶ 21.) At a subsequent point in that Complaint, he alleged that, on April 23, 2010, he was moved to Z Block. (Id. ¶ 25.) Therefore, to the extent that Cardona previously alleged that the threat from asbestos was contained to D Block, his claim in the instant case that he has been forced to eat on an asbestos-covered floor continuously since June 2009 does not state a plausible imminent threat of serious physical injury from asbestos.

In short, Cardona's allegations that he is in imminent danger of serious physical harm as a result of his living conditions, including double celling, are speculative in nature, and therefore fail to overcome the application of the Three Strikes Rule.

## III. Conclusion

For the foregoing reasons, we will deny Cardona's application for leave to proceed in forma pauperis, and direct him within twenty-one (21) days from the date of this Order to pay the balance remaining on the $350.00 filing fee for this action, which is $268.78. Cardona's failure to pay the amount owed within the required time will result in the dismissal of this action.

We also will vacate the Administrative Order directing the Warden of USP Lewisburg to collect funds from Cardona's account in monthly installments. (Doc. 5.) In the event that Cardona does not pay the balance remaining on the filing fee and we dismiss this action, we then will direct the Clerk of Court to refund to Cardona the funds that have been collected from him to pay the filing fee. An appropriate Order follows.

BY THE COURT:

_____
JUDGE JAMES M. MUNLEY
United States District Court

Dated: May __, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE CRISTOBAL CARDONA, | : | CIVIL NO. 3:CV-11-0054 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| B.A. BLEDSOE, et al., | : | |
| Defendants | : | |

## ORDER

AND NOW, this 12th day of May 2011, it is hereby ORDERED that:

1. Plaintiff's application for leave to proceed in forma pauperis (Doc. 2) is **DENIED**.

2. The Administrative Order entered on January 7, 2011 (Doc. 5) is **VACATED**. The Clerk of Court shall mail a copy of this Order to the Warden of USP Lewisburg to inform him that the Order has been vacated.

3. Within twenty-one (21) days from the date of this Order, Plaintiff shall send to: "Clerk, U.S. District Court, P.O. Box 1148, Scranton, PA 18501," a check or money order in the amount of $268.78.

4. If Plaintiff fails to comply with the foregoing paragraph within the required time, this action will be dismissed without prejudice.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court