PJS:MJB:dlm

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE CARDONA,** | : | **CIVIL NO.  3:CV-11-0054** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Munley, J.** |
| | : | |
| **B.A. BLEDSOE, et al.,** | : | |
| **Defendants.** | : | **Filed Electronically** |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION
## TO DISMISS AND FOR SUMMARY JUDGMENT

PETER J. SMITH
United States Attorney

Michael J. Butler
Assistant United States Attorney
PA 81799

Dawn L. Mayko
Paralegal Specialist
U.S. Attorney's Office
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108
Phone:  717-221-4482
Fax: 717-221-2246
Michael.J.Butler@usdoj.gov

Date: November 21, 2011

# TABLE OF CONTENTS

I.  Procedural History.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  Questions Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A. Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B. Summary Judgement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.  Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.     Cardona failed to exhaust his administrative remedies. . . . . . . . . . . . 6

      B.     Because Defendants are being sued in their official capacities, they
            are entitled to sovereign immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.     The Court lacks personal jurisdiction over Defendants Lappin, Watts,
            Keffer, Townsend, Carswell, Bracy, Pollack,
            Maldonado, and Dodrill. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      D.     Cardona's claims are barred by the Favorable Termination Rule. . . 13

      E.     Cardona was properly designated to USP Lewisburg's Special
            Management Unit (SMU). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      F.     Complaints regarding double celling/inadequate cell space. . . . . . . 17

      G.     Respondeat Superior cannot form the basis of a Bivens Action. . . . 19

      H.     Inadequate Law Library Time. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      I.     Defendants are entitled to Qualified Immunity. . . . . . . . . . . . . . . . . 23

i

V.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES
## CASES

Abdul-Akbar v. Watson, 4 F.3d 195 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . 22

Anderson v. Liberty Lobby, Incorporated, 477 U.S. 242 (1986). . . . . . . . . . . . . . 6

Arizonans For Official English v. Arizona, 520 U.S. 43 (1997). . . . . . . . . . . . . . 6

Arruda v. Fair, 710 F.2d 886 (1st Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 23

Becker v. Smith, 554 F. Supp. 767 (M.D. Pa 1982). . . . . . . . . . . . . . . . . . . . . . . 17

Beeson v. Fishkill Correctional Facility, 28 F.Supp.2d 884 (S.D.N.Y. 1998). . . . . 7

Bell v. Wolfish, 441 U.S. 520 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Beshaw v. Fenton, 635 F.2d 239 (3d Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . 16

Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388

    (U.S. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Bivens.  Clemente v. Allen, 120 F.3d 703 (7th Cir. 1997). . . . . . . . . . . . . . . 14, 19

Booth v. Churner, 532 U.S. 731 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bounds v. Smith, 430 U.S. 817 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Brooks v. Buscher, 62 F.3d 176 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . 22

Brown v. Croak, 312 F.3d 109 (3d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Burns v. Pennsylvania DOC, 642 F.3d 163 (3d Cir. 2011). . . . . . . . . . . . . . . . . . 25

Campbell v. Miller, 787 F. 2d (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Celotex Corporation v. Catrett, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . 6

In re City of Phila. Litig, 49 F.3d 945 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . 24

Edwards v. Balisok, 520 U.S. 641 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Elder v. Holloway, 510 U.S. 510 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

FDIC v. Meyer, 510 U.S. 471 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Flanagan v. Shively, 783 F.Supp. 922 (M.D. Pa.), aff'd 980 F.2d 722 (3d Cir.

   1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Forbes v. Reno, 893 F. Supp. 476 (W.D. Pa. 1995). . . . . . . . . . . . . . . . . . . . . . . 11

Freedman v. City of Allentown, 853 F.2d 1111 (3d Cir.1988). . . . . . . . . . . . . . 23

Goff v. Nix, 803 F. 2d (8th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Gould Elecs. Incorporated v. United States, 220 F.3d 169 (3d Cir. 2000). . . . . . . . 5

Harlow v. Fitzgerald, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Heck v. Humphrey, 512 U.S. 477 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

IMO Indus., Incorporated v. Kiekert AG, 155 F.3d 254 (3d Cir.1998). . . . . . . . . 12

Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . 15

Loeffler v. Frank, 486 U.S. 549 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Malley v. Briggs, 475 U.S. 335 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

McLaughlin v. Watson, 271 F.3d 566 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . 23

Meacham v. Fano, 427 U.S. 215 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mitchell v. Dodrill, 696 F. Supp. 2d 454 (2010). . . . . . . . . . . . . . . . . . . . . . . . . 18

Moody v. Daggett, 429 U.S. 78 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Olim v Wakinekona, 461 U.S. 238 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Orsatti v. New Jersey State Police, 71 F.3d 480 (3d Cir. 1995). . . . . . . . . . . . . . 25

Packard v. Provident National Bank, 994 F. 2d (3d Cir. 1993). . . . . . . . . . . . . . . 5

Pearson v. Callahan, 555 U.S. 223 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Porter v. Nussle, 534 U.S. 516 (2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Pugliese v. Nelson, 617 F. 2d (2nd Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . 17

Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ryan v. Burlington County, 860 F.2d 1199 (3d Cir. 1988). . . . . . . . . . . . . . . 24, 25

Saucier v. Katz, 533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Saudi v. Acomarit Maritimes Services, S.A., 114 F. App'x 449 (3rd Cir. 2004).. 13

Smith v. Shawnee Library System, 60 F.3d 317 (7th Cir. 1995). . . . . . . . . . . . . 22

Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Thornburgh v. Abbot, 490 U.S. 401 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . 14

Turner v. Safley, 482 U.S. 78 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States Court of Appeals for the Eighth Circuit, Johnson v. Jones, 340 F.3d 624 (8th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

United States v. Testan, 424 U.S. 392 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States. Kentucky v. Graham, 473 U.S. 159 (1985). . . . . . . . . . . . . . . . . 11

United States. Steel City Company v. Citizens For Better Environment, 523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Weinberger v. Salfi, 422 U.S. 749 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Wilson v. Shannon, 982 F. Supp. 337 (E.D. Pa 1997). . . . . . . . . . . . . . . . . . . . . . 20

Woodford v. Ngo, 548 U.S. 81 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Young v. Quinlan, 960 F.2d 351 (3d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATUTES**

18 U.S.C. § 3621(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 4081. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 C.F.R. § 542.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

28 C.F.R. § 542.10(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

28 U.S.C. § 2241. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 1997e(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 56(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed.R.Civ.P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Defendants B.A. Bledsoe, Warden;  D. Hudson, Associate Warden; B Trate, Captain; L. Karpen, Chief Psychologist; D. Mink, Staff Psychologist; P. Lizardi, Correctional Counselor; B. Hamilton, Case Manager; H. Birdsall, Correctional Treatment Specialist; J. Fleming, Lieutenant; C. Anderson, Correctional Officer; J.L. Norwood, NERO Regional Director; Harley Lappin, BOP Director (retired); H. Watts, National Inmate Appeals Administrator; J. Keffer, Warden, FMC Carswell; L. Townsend, Unit Manager, USP Pollack; D. Bracy, SMU Hearing Administrator, USP Pollack; G. Maldonado, SCRO Regional Director, D. Scott Dodrill, Assistant Director (retired); Attorney General Eric Holder; and, the Bureau of Prisons (BOP), hereby file this brief in support of their motion to dismiss and for summary judgment.  For the reasons noted below, this Court should grant Defendants' motion to dismiss and for summary judgment because Cardona failed to exhaust his administrative remedies; Defendants are entitled to sovereign immunity; Court lacks jurisdiction over Defendants  Lappin, Watts, Keffer, Townsend, Carswell, Bracy, Pollack, Maldonado, and Dodrill; Plaintiff's claims are barred by the favorable termination rule; Cardona was properly designated to USP Lewisburg's Special Management Unit; double celling/inadequate cell space is not unconstitutional; because Respondeat Superior

1

cannot form the basis of a <u>Bivens</u> action; Cardona received adequate Law Library

Time; and Defendants enjoy qualified immunity.

## I. Procedural History

Plaintiff Jose Cardona, an inmate incarcerated at the United States

Penitentiary, in Lewisburg, Pennsylvania ( USP Lewisburg), filed this <u>Bivens</u>[1]

action alleging:  1) challenges to his designation to the SMU program/lack of due

process; 2) lack of adequate living space/double celling; 2) "ban on contact visits,"

3) limits on phone calls; 4) lack of a separate segregation unit; 5) denial

meaningful review of his SMU status; 6) reduced commissary; 7) denial of work

performance pay; 8) denial of access to legal research and jailhouse lawyers; 8)

denial of possession of his personal law books; 9) allegations regarding March 15,

2010 cell fight; 10) no separate "SHU" unit; 11) lack of psychology services; 12)

allegations that defendants Lappin, Norwood, Watts, Bledsoe and Dodrill were

involved in a conspiracy to murder inmates through double celling; 12)

psychology disability prevents him from doing SMU program/workbook

assignments; 13) allegations that staff were not filing his "grievances;" 14) various

allegations of retaliation for filing grievances, i.e. set back in SMU phases; 15)

---

[1] <u>Bivens v. Six Unnamed Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (U.S. 1971).

denial of access to courts; 16) allegations that defendants Keffer, Townsend, Maldonado, Bracy, and Watts were involved in a conspiracy to deny the plaintiff's access to court; 17) denial of $50 "incentive program" reward; 18) APA violations; and 19) unlawful visual (strip) searches.  <u>See</u> Amend. Compl. at 4-5.

Following an enlargement of time, Defendants filed a motion to dismiss and for summary judgment on October 31, 2011.  Doc. 68.  Defendants file this instant brief in support of that motion in accordance with M.D. Pa. Local Rule 7.5.

## II.  Factual Background

Cardona exhausted his available administrative remedies with regard to: 1) his appeal of his placement in the SMU program; 2) his complaints relating to his cell size and double celling; 3) a visual search is unconstitutional; and, 4) his challenge to the DHO proceeding regarding the March 15, 2010, cell fight.  <u>See</u> Statement of Material Facts ("SMF") ¶¶ 1-6.   He also exhausted on issues that are not specifically raised in his amended complaint: 1) his complaints to purchase a winter coat; and, 2) an appeal concerning a correspondence rejection.  <u>See</u> <u>id.</u>

Cardona was involved in 70 incident reports while in BOP custody, which is accredited by the American Correctional Association ("ACA"), including 8 prohibited acts that are labeled the "greatest severity."  <u>See</u> <u>id.</u> 7-19.

Of note, on June 30, 2011, officials placed Cardona in ambulatory restraints

3

because of his disruptive behavior.  After checking Cardona per policy, officials

released him at noon on July 1, 2002.  See id. ¶¶ 24-31.

A record of visual searches conducted on Cardona was maintained in a log

book.  See id. ¶¶ 20-22.

Cardona was properly designated into the SMU at USP Lewisburg.  See id.

¶¶ 10-17, 42-60.

### III.  Questions Presented

A.   Should this Court grant summary judgment as Cardona failed to
     exhaust his administrative remedies?

B.   Should this Court dismiss Plaintiff's Amended Complaint because
     Defendants are entitled to sovereign immunity?

C.   Should this Court dismiss Plaintiff's Amended Complaint as the
     Court lacks personal jurisdiction over Defendants Lappin, Watts,
     Keffer, Townsend, Carswell, Bracy, Pollack, Maldonado, and
     Dodrill?

D.   Should this Court dismiss Plaintiff's Amended Complaint because
     Cardona's claims are barred by the Favorable Termination Rule?

E.   Should this Court dismiss Plaintiff's Amended Complaint because
     Cardona was properly designated to USP Lewisburg's Special
     Management Unit?

F.   Should this Court dismiss Plaintiff's Amended Complaint because
     double celling/inadequate cell space is not unconstitutional?

G.   Should this Court dismiss Plaintiff's Amended Complaint because
     Respondeat Superior cannot form the basis of a Bivens Action?

H. Should this Court dismiss Plaintiff's Amended Complaint because he received adquate Law Library Time?

I. Should this Court grant summary judgment as Defendants are entitled to Qualified Immunity?

**Suggested Answers:** Affirmative.

## IV. Legal Standards

### A. Motion to Dismiss

When ruling on a Rule 12(b)(1) motion a court may treat the motion as a factual challenge, which does not require a court to accept the allegations of a complaint as true. Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). The court may weigh any evidence to satisfy itself that it does or does not have subject matter jurisdiction, but it cannot consider the merits of an action until it is satisfied that the dispute falls within the class of cases or controversies to which Article III, Section 2 of the United States Constitution has extended the judicial power of the United States. Steel City Co. v. Citizens For Better Env't, 523 U.S. 83, 102 (1998).

A plaintiff bears the burden of establishing that the district court has subject matter jurisdiction over the claims raised in the complaint. See Packard v. Provident Nat'l Bank, 994 F. 2d 1039, 1045 (3d Cir. 1993). A court that is without proper jurisdiction cannot proceed at all and must dismiss the suit. See

Arizonans For Official English v. Arizona, 520 U.S. 43 (1997).

**B.     Summary Judgment**

The award of summary judgment to a party is appropriate when supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Supreme Court held that "Rule 56(e) . . . requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Additionally, an opposing party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex, 477 U.S. at 325.  For the purpose of summary judgment, then, the Court should consider only those material facts about which there is no genuine dispute.

## V. Argument

**A.     Cardona failed to exhaust his administrative remedies.**

Cardona was required to exhaust his administrative remedies by the Prison

Litigation Reform Act of 1995 ("PLRA"), Pub.L.No. 104-134, 110 Stat. 1321 (1996).

The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process.  See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  "[I]t is beyond the power. . . of any . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Correctional Facility, 28 F.Supp.2d 884, 894-95 (S.D.N.Y. 1998)(citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)).

The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Nyhuis, 204 F.3d at 71.  The PLRA also mandates that

7

an inmate "properly" exhaust administrative remedies before filing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 89.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Id. at 90 (quoting Nussle, 534 U.S. at 525).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

Further, the United States Court of Appeals for the Third Circuit stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court."  Oriakhi v. United States, 165 Fed.Appx. 991, 993 (3d Cir. 2006)(not precedential).  In citing to a case from the United States Court of Appeals for the Eighth Circuit, Johnson v. Jones, 340 F.3d 624, 627-28 (8th Cir. 2003), the Oriakhi court found that the lower court had

8

properly dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his Bivens claim. "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." Oriakhi, 165 Fed.Appx. at 993 (quoting Johnson, 340 F.3d at 627-28).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. Id. at 295 n.9. (noting that defendants may raise failure to exhaust as the basis for a motion to dismiss). Therefore, it must be pleaded and proven by the defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

The BOP has an administrative remedy procedure with respect to inmate complaints, namely 28 C.F.R. § 542.10. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the BOP will refer the inmate to the appropriate statutorily-mandated procedures." Id. § 542.10(c).

Inmates are to informally present their complaints to the staff and staff are

9

to  attempt to resolve the matter.  Id. § 542.13(a).  If the informal resolution is

unsuccessful, the inmate is then to execute the appropriate form to bring the matter

to the attention of the warden.  Id.  The warden then responds to the inmate's

complaint within 20 calendar days.  Id. § 542.18.

If an inmate is dissatisfied with the warden's response, he may then appeal

to the Regional Director within 20 calendar days.  Id. § 542.15(a).  If the response

of the Regional Director is not satisfactory, the inmate may then appeal to the

BOP's Central Office within 30 calendar days, which office is the final

administrative appeal in the BOP.  Id.  An exception is made for appeals of

Discipline Hearing Officer (DHO) decisions, which are first raised directly to the

regional office level and then to the central office level.  Id. § 542.14 (d)(2).  No

administrative remedy appeal is considered to have been fully exhausted until

rejected by the BOP's Central Office.  Id. § 542.

In the ordinary course of business, computerized indexes of all

administrative appeals filed by inmates are maintained so that rapid verification

may be made as to whether an inmate has exhausted available administrative

remedies on a particular issue.  Id. § 542.

If a remedy is rejected, it is returned to the inmate and the inmate is

provided with a written notice explaining the reason for rejection.  Id. § 542.17(b).

10

A copy of the remedy is <u>not</u> maintained by the BOP.  <u>Id.</u>

But for the claims mentioned above, Cardona did not exhaust available administrative remedies.  Thus, this Court should grant summary judgment to Defendants on those claims.

## B.   Because Defendants are being sued in their official capacities, they are entitled to sovereign immunity.

In this case, Cardona is suing Defendants in both their official capacities and individual capacities.  A suit against a federal employee in his or her official capacity is essentially a suit against the United States.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 (1985).  The doctrine of sovereign immunity is "inherent in our constitutional structure" and renders the United States of America, its departments, and officials immune from suit except where the United States has consented to be sued.  <u>See</u> <u>Williamson v. United States Dep't of Agric.</u>, 815 F.2d 368, 373 (5th Cir. 1987); <u>see also</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994) (citing <u>Loeffler v. Frank</u>, 486 U.S. 549, 554 (1988)).

The doctrine of sovereign immunity extends to individual officers sued in their official capacity because an official capacity suit is only another way of pleading an action against an entity of which an officer is an agent.  <u>See</u> <u>Forbes v. Reno</u>, 893 F. Supp. 476 (W.D. Pa. 1995).  Thus, absent an express congressional

waiver of sovereign immunity, the United States cannot be sued.  United States v. Testan, 424 U.S. 392, 399 (1976).  Accordingly, this Court lacks subject matter jurisdiction over any alleged constitutional claim against Defendants in their official capacities and this Court should dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.

**C.      The Court lacks personal jurisdiction over Defendants Lappin, Watts, Keffer, Townsend, Carswell, Bracy, Pollack, Maldonado, and Dodrill.**

To exercise personal jurisdiction over a defendant, a federal court must undertake a two-step inquiry.  First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction. Second, the court must apply the principles of due process.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir.1998).

Pennsylvania's long arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States."  42 PA Cons. Stat. Ann § 5322(b).

Personal Jurisdiction of a non-resident defendant may only be asserted if they have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 US 310 (1945).  In assessing personal

jurisdiction, the court must resolve the question based on the circumstances of that particular case presents.  <u>Burger King v. Rudzewicz</u>, 471 US 462 (1985).

Personal jurisdiction may be exercised where the defendant has specific or general contacts with the forum.  Specific jurisdiction is only appropriate where the cause of action is related to or arises of the defendant's forum-related activities, so that it should reasonably expect to be haled into court.  <u>See</u> <u>Saudi v. Acomarit Maritimes Services, S.A.</u>, 114 F. App'x 449 (3rd Cir. 2004) (citations omitted) General jurisdiction may be accomplished if the defendant has continuous and systematic contacts with the forum state.  <u>Id.</u>

In this case, none of the above named Defendants maintain a place of business or residence in the state of Pennsylvania that would subject them to jurisdiction within the state.  <u>See</u> SMF ¶ 41.  Because none of these Defendants have engaged in "continuous and systematic" activities in Pennsylvania, this Court cannot exercise general jurisdiction over them and should dismiss them from the amended complaint.

**D.    <u>Cardona's claims are barred by the Favorable Termination Rule.</u>**

Cardona's claims regarding the March 13, 2010 cell fight are barred by the favorable termination rule.  In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), and later in <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997), the Supreme Court ruled that a

plaintiff filing suit under 42 U.S.C. § 1983 cannot seek damages for harm caused by actions the unlawfulness of which would necessarily render the fact or length of his confinement invalid, unless he can prove that the conviction, sentence, or prison disciplinary sanction that resulted from those actions has been reversed, invalidated, or called into question by a grant of federal habeas corpus relief (in other words, terminated favorably to the plaintiff).  See Heck, 512 U.S. at 486-87; Edwards, 520 U.S. at 646-48; see also Torres v. Fauver, 292 F.3d 141, 143, 145-50 (3d Cir. 2002) (stating that the favorable-termination rule applies where the fact or duration of an inmate's confinement is at issue).  This rule also applies in civil rights actions brought pursuant to Bivens.  Clemente v. Allen, 120 F.3d 703, 705 (7th Cir. 1997).

The DHO ultimately found Cardona in violation of Code 201, Fighting with Another Person, and was sanctioned, among other things, to loss of Good Time Credit (GCT) for the March 13, 2010 incident.  See SMF ¶¶ 6-8. Cardona presents no claim or evidence that the disciplinary sanctions he received as a result of his incident report having been called into question through the prosecution of, for example, a 28 U.S.C. § 2241 petition.  To the extent any favorable ruling regarding Cardona's claims, if rendered, would imply that the loss of good-time credit as a result of any related incident report was invalid, those claims are not

14

cognizable at this time.  <u>Leamer v. Fauver</u>, 288 F.3d 532, 542-43 (3d Cir. 2002).

Accordingly, this Court should grant summary judgment to Defendants as to the March 13, 2010 claims.

**E.    Cardona was properly designated to USP Lewisburg's Special Management Unit (SMU).**

Cardona makes several conflicting statements regarding his claims that he was not appropriately designated to the USP Lewisburg Special Management Unit (SMU).  He argues he had a "relatively perfect record" in his incarceration prior to his SMU referral, then admits "5 positive urine tests" but claims "they were not considered serious."  Likewise, Cardona alternatively states that he has not participated in gang activity, and then complains about staff forcing him into a cell with "an inmate who is from a rival gang."  <u>See</u> Amend. Compl. at 5, 58-59, 73, 91.

Cardona's disciplinary history belies his claims.  He has received 70 disciplinary incident reports while in BOP custody.   <u>See</u> SMF ¶ 9. Many of these incident reports charged him with more than one prohibited act.  <u>See</u> <u>id.</u>

The discretion to transfer an inmate between prisons rests solely with prison officials.  18 U.S.C. § 3621(b).  The decision as to where an inmate should be incarcerated is within the sole discretion of the BOP.  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u>, <u>Moody v.</u>

Daggett, 429 U.S. 78 (1976).

Simply stated, an inmate has no right to be confined in any particular prison, nor does he have a right to be transferred to any particular prison. See Young v. Quinlan, 960 F.2d 351, 358 n.16 (3d Cir. 1992); Flanagan v. Shively, 783 F.Supp. 922 (M.D. Pa.), aff'd 980 F.2d 722 (3d Cir. 1992). This principle has been established by Supreme Court decisions. In Meacham v. Fano, 427 U.S. 215 (1976), the Court held:

> The ... decision to assign a convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another... Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another.

Id. at 224-225.

In Olim v Wakinekona, 461 U.S. 238 (1983), the Supreme Court reaffirmed this principle:

> no right [is conferred] on the prisoner to remain in the prison to which he is initially assigned ... because the State had retained 'discretion to transfer [him] for whatever reason or for no reason at all', [and therefore] had not created a constitutionally protected liberty interest.

Id. at 249.

In addition, in Beshaw v. Fenton, 635 F.2d 239 (3d Cir. 1980), the Third Circuit, referencing Meacham, stated that the Bureau of Prisons regulations

16

concerning classification, designation and transfer do not limit the agency's

discretion so as to create for any prisoner a legitimate expectation that he will be

assigned to a particular institution.  The Supreme Court has stated, in dicta, that

even though prisoner classification and eligibility for rehabilitative programs may

cause a 'grievous loss' upon an inmate, no due process protections are created.

Becker v. Smith, 554 F. Supp. 767 (M.D. Pa 1982) (citing Moody v. Daggett, 429

U.S. 78, 88, n. 9 (1976)).  Congress has given the BOP full discretion to control

these conditions of confinement, 18 U.S.C. § 4081.   The federal courts should not

be involved in prisoner classification, and hence, the day to day operations of the

prison system.  Becker at 770 (citing Pugliese v. Nelson, 617 F. 2d 916, 924 (2nd

Cir. 1980)).

As set forth in detail above, Cardona was referred to the SMU program

based on his history of disruptive behavior/disruptive group affiliation in

accordance with applicable BOP policy.  See id. ¶¶ 10-17, 42-60.  Thus, to the

extent his claim is based on any of the defendants involvement in the process to

refer or evaluate his appropriateness as an SMU candidate, he has no evidence of a

constitutional violation.  Accordingly, this Court should grant summary judgment

as to his claims regarding his SMU placement.

**F.**     **Complaints regarding double celling/inadequate cell space.**

17

Cardona complains about various aspects of double celling, claiming that he has not gotten along with some former cellmates and alleges, without any supporting evidence provided, that double celling was a factor in other inmate assaults and "murders" although he does not allege that he was personally involved.  See Amend. Compl. at 10-11.

It is well settled that double celling is not per se unconstitutional.  Rhodes v Chapman, 452 U.S. at 348,, 101 S. Ct  2392.

In a recent challenge to double celling at USP Lewisburg's SMU, the local District Court concluded, after analysis of totality of SMU conditions found that a SMU inmate's " disappointment here with the double celling practice in the SMU does not amount to cruel and unusual punishment."  Mitchell v. Dodrill, 696 F. Supp. 2d 454 (2010); see also Harrison v. Bledsoe, Civil No. 1:09-CV-01600, 2010 WL 186804, at *6 (M.D. Pa. Jan 13, 2010) (Conner, J.) (copy attached) (finding no Eighth Amendment claim where the plaintiff alleges he is double celled for twenty three hours in SMU and such double celling leads to tension and stress).[2]

---

[2]Notably, Cardona referenced the American Correctional Association (ACA) standards regarding cell space, apparently as support of his claim that the practice is unconstitutional. The ACA recently re-accredited USP Lewisburg.  See id. ¶¶ 18-19.

Therefore, this Court should dismiss Cardona's amended complaint as to the double celling claims.

## G.   Respondeat Superior cannot form the basis of a *Bivens* Action.

Cardona sues Defendant Trate in his role as the Captain, supervising Correctional Services.  The Supreme Court eliminated the theory of supervisor liability from Bivens suits, opining that supervisors "may not be held accountable for the misdeeds of their agents."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Rather, the Supreme Court held that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  Id.

Cardona only claims that Defendant Trate subjected him to unlawful visual searches for the purpose of harassment  – not that he actually searched himself. See Amend. Compl. at 27. Cardona provides no detail as to when or where these allegedly unlawful searches occurred or why he concludes they are "harassment." See id. The log book, however, shows that Cardona was visually searched on May 4, 2011, and May 9, 2011.  See SMF ¶ 23.

BOP Program Statement 5521.05, Searches of Housing Units, Inmates and Inmate Work Areas, provides that "visual searches" are visual inspections of all body surfaces and body cavities."  See SMF ¶ 20-22.  P.S. 5521.05 further provides that "staff may conduct a visual search where there is reasonable belief

19

that contraband may be concealed on a person, or a good opportunity for concealment has occurred.  See id.

Inmates do not have a constitutional right to be free from strip searches which can be conducted by prison officials without reasonable cause.  See Bell v. Wolfish, 441 U.S. 520 (1979); Wilson v. Shannon, 982 F. Supp. 337 (E.D. Pa 1997). The reasonableness of inmate searches is determined by balancing "the need for the particular search against the invasion of personal rights that the search entails."  Bell, 441 U.S. 520.  In the SMU, the majority of inmates have extensive disciplinary histories, many including the possession of weapons, drugs or other contraband, thorough inmate accountability, including visual searches are particularly important.  See id.

"Where, as here, a plaintiff does not allege excessive force or any injury resulting from a strip search, several courts have held routine strip searches reasonable."  See Wilson v. Harmon, Civil No. 1:CV-02-1583, 2003 WL 21844285 *2 (D.Del July 31, 2003) (Robinson, J.) (copy attached); see also Goff v. Nix, 803 F. 2d 358, 370-71 (8th Cir. 1986) (upholding visual body cavity search of segregation inmates before and after going to exercise area); Arruda v. Fair, 710 F.2d 886 (1st Cir. 1983) (validating strip searches of inmates traveling from segregated housing unit to law library, infirmary, or visitor's rooms); Campbell v.

<u>Miller</u>, 787 F. 2d 217, 228 (7th Cir. 1986) (permitting visual body cavity searches of high security inmates being transported to the law library).

It should also be noted that Defendant Trate, in his position as Captain, rarely personally conducts visual searches of inmates, and had not conducted a visual search of Cardona. <u>See</u> SMF ¶ 23.

Without any allegations that Defendant Trate actually performed such visual searches, Cardona's amended complaint is deficient.  Therefore, this Court should either dismiss Cardona's amended complaint against Defendant Trate for failure to allege personal liability or grant judgment to Defendant Trate because the record shows he was not involved in any alleged improper visual search.

## H.    **Inadquate Law Library Time.**

USP Lewisburg provides inmate law library access through an Electronic Law Library (ELL).  <u>See</u> SMF ¶¶ 32-39.  As shown on the attached usage report, Cardona signed on to the ELL system for significant periods of time from March 25, 2010 through October 7, 2011. <u>See</u> <u>id</u>

Persons convicted of serious crimes and confined to penal institutions retain the right to meaningful access to the courts.  <u>Bounds v. Smith</u>, 430 U.S. 817 (1977).  This access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with

adequate law libraries or adequate assistance from persons trained in the law." Id. at 828.

This right "must be exercised with due regard for he 'inordinately difficult undertaking' that is modern prison administration." Thornburgh v. Abbot, 490 U.S. 401, 407 (1989) (quoting Turner v. Safley, 482 U.S. 78, 85 (1987)).

"All that is required is that [prisoners] have access to a . . . system by which to obtain legal materials." Abdul-Akbar v. Watson, 4 F.3d 195, 203 (3d Cir. 1993). An inmate's right of meaningful access to the court does not encompass an unfettered right of access to prison law libraries. Smith v. Shawnee Library System, 60 F.3d 317 (7th Cir. 1995). Rather, that right is limited to access to a law library sufficient to enable a plaintiff to research the law to determine what facts are necessary to state a cause of action, to perform basic research, to formulate legal theories, and to get through the initial stages of a lawsuit. 60 F.3d 317 at 322; see also Brooks v. Buscher, 62 F.3d 176 (7th Cir. 1995).

Given the lock-down nature of the SMU program, inmate access to the law library is more limited than in a general population facility. Cardona's record of law library usage indicates he has had regular access to the BOP's ELL. See SMF ¶ 39. Moreover, Cardona has managed to meet deadlines and correspond with the court regarding this current action.

Thus, this Court should grant summary judgment to Defendants as to inadequate law library access claims.

## I.   Defendants are entitled to Qualified Immunity.

In a civil rights suit, the Third Circuit requires that the "complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs." Freedman v. City of Allentown, 853 F.2d 1111, 1114 (3d Cir.1988).

"Because vicarious liability is inapplicable to Bivens ..., a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct, 1937 (2009).

Qualified immunity shields government officials if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "'[Q]ualified immunity affords 'protection to all but the plainly incompetent or those who knowingly violate the law.'" McLaughlin v. Watson, 271 F.3d 566, 570 (3d Cir. 2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  The primary purpose of affording public officials the privilege of qualified immunity is to ensure the vigorous exercise of their official authority, see id. (citations

23

omitted), and "to protect them 'from undue interference with their duties and from

potentially disabling threats of liability.'"  Elder v. Holloway, 510 U.S. 510, 514

(1994) (quoting Harlow, 457 U.S. at 806).

In order to determine if a government official is entitled to qualified

immunity, court must determine whether the facts "taken in a light most favorable

to the party asserting the injury . . . show the officer's conduct violated a

constitutional right;" and whether the constitutional right alleged "was clearly

established."  Saucier v. Katz, 533 U.S. 194, 200-02 (2001).   A court may

exercise discretion in addressing which of these two prongs it needs to address in

light of the circumstances of each case.  See Pearson v. Callahan, 555 U.S. 223,

236-37 (2009).   Thus, in some instances it will be unnecessary to determine

whether a constitutional right was violated if a court determines first that the right

alleged was not clearly established.  See id.

In determining whether a right is clearly established, "the Third Circuit has

demanded 'some but not precise factual correspondence between relevant

precedents and the conduct at issue.'"  Ravitch v. City of Phila., Civ. A. No. 06-

3726, 2009 WL 878631, at *12 (E.D. Pa. Mar. 31, 2006) (citing In re City of

Phila. Litig, 49 F.3d 945, 970 (3d Cir. 1995) (citing Ryan v. Burlington County,

860 F.2d 1199, 1208-09 (3d Cir. 1988) (quotations omitted in original))).  Thus, a

24

government official must have "'fair warning' that their conduct violates constitutional guarantees." Burns v. Pennsylvania DOC, 642 F.3d 163, 177 (3d Cir. 2011).

A court must also look at the information possessed by the defendant at the time of the alleged constitutional violation and how a reasonable official would have reacted. See id. (citing Ryan v. Burlington County, 860 F.2d 1199, 1204 (3d Cir. 1988) (footnote omitted)). In doing so, the court should look at the entire episode confronted by the officer and take into account any reasonable mistake made by an officer. See Kelly v. Borough of Carlisle, No. 1:07-cv-1573, 2009 WL 1230309, at *3 (M.D. Pa. May 4, 2009) (Kane, J.) (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)).

As set forth above, to the extent any of the Defendants were involved in Cardona's referral and designation to the SMU, the process was handled in accordance with applicable policy. There is no "clearly established law" that the conditions of confinement (including double celling) under which the SMU operates violate a constitutional right. Quite the opposite, several local decisions noted above, support the SMU framework. Likewise, as set forth above, Cardona has and continues to have regular access to the institution's electronic law library system.

25

Accordingly, because Defendants enjoy the protection of qualified immunity, this Court should grant their motion for summary judgment.

## V.  Conclusion

For the reasons noted above, Defendants respectfully request that the Court grant their motion to dismiss and for summary judgment.

Respectfully submitted,

PETER J. SMITH
United States Attorney

Dated: November 21, 2011          s/ Michael J. Butler
Michael J. Butler
Assistant United States Attorney
PA 81799
Dawn L. Mayko
Paralegal Specialist
U.S. Attorney's Office
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108
Phone:  717-221-4482
Fax: 717-221-2246
Michael.J.Butler@usdoj.gov

26

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE CARDONA,** | : | **CIVIL NO.  3:CV-11-0054** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Munley, J.** |
| | : | |
| **B.A. BLEDSOE, et al.,** | : | |
| **Defendants.** | : | **Filed Electronically** |

## <u>CERTIFICATE OF SERVICE BY MAIL</u>

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on November 21, 2011, she served a copy of the attached

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION
## TO DISMISS AND FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

<u>Addressee:</u>

Jose C. Cardona
Reg. No. 40869-080
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

/s/ Dawn L. Mayko
Dawn L. Mayko
Paralegal Specialist