## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE CRISTOBAL CARDONA, | : | CIVIL NO. 3:11-CV-054 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| B.A. BLEDSOE, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This matter comes before the Court for preparation of a report and recommendation[1] regarding a motion for class certification filed by the plaintiff, Jose Cristobal Cardona, a *pro se* litigant and federal inmate housed in the Special Management Unit of the United States Penitentiary, Lewisburg, on behalf of a putative class consisting of his fellow inmates. (Doc. 50)  For the reasons set forth below, we

---

[1]While the United States Court of Appeals for the Third Circuit has not definitively ruled upon the question of whether a United States Magistrate Judge can dispose of a class certification motion, see Wishnefsky v. Salameh, No. 11-1680, 2011 WL 4090495 (3d Cir. Sept. 15, 2011), we believe that the better view is that these matters, which may be dispositive of certain class claims, be addressed through a report and recommendation. Garris v. Gianetti, 160 F.R.D. 61 (E.D.Pa. 1995). This approach ensures that Cardona's rights are more fully protected since it enables Cardona to lodge objections to the report and recommendation, and receive a *de novo* review of this matter by the District Court.

recommend that the District Court decline this invitation to certify Cardona's lawsuit as a class action at the present time.

Briefly, the pertinent background of this case is as follows:  On January 7, 2011, the plaintiff, an inmate confined in the Special Management Unit of the United States Penitentiary in Lewisburg, Pennsylvania (USP-Lewisburg) commenced this action by filing a *pro se* complaint. (Doc. 1)  Liberally construed, Cardona's complaint leveled a broad array of constitutional claims. (Id.)  Indeed, the defendants have identified no less than twenty-two distinct legal claims advanced by Cardona in his *pro se* complaint, stating that:

> Cardona's allegations . . . include: 1) challenges to his designation to the SMU program/lack of due process; 2) lack of adequate living space/double celling; 3) "ban on contact visits"; 4) limits on phone calls; 5) lack of a separate segregation unit; 6) denial [of] meaningful review of his SMU status; 7) reduced commissary; 8) denial of work performance pay; 9) denial of access to legal research and jailhouse lawyers; 10) denial of possession of his personal law books; 11) allegations regarding March 15, 2010 cell fight; 12) no separate "SHU" unit; 13) lack of psychology services; 14) allegations that defendants Lappin, Norwood, Watts, Bledsoe and Dodrill were involved in a conspiracy to murder inmates through double celling; 15) psych disability prevents him from doing SMU program/workbook assignments; 16) staff were not filing his "grievances;" 17) retaliation for filing grievances, i.e. set back in SMU phases; 18) denial of access to court s; 19) defendants Keffer, Townsend, Maldonado, Bracy and Watts were involved in a conspiracy to deny the plaintiff's access to court; 20) denial of $50 "incentive program" reward; 21) APA violations; and 22) unlawful visual (strip) searches.

(Doc. 66, p. 2)

While many of these claims involved allegations which were unique and personal to Cardona, Cardona's housing and double-celling complaint on its face appeared to present an issue of potentially general applicability to all SMU inmates. On September 21, 2011, citing these double-celling and adequate living space concerns, Cardona moved pursuant to Rule 23 of the Federal Rules of Civil Procedure to certify his lawsuit as a class action on behalf of all Lewisburg inmates. (Doc. 50)

Cardona's motion for class action certification acknowledges that this plaintiff must demonstrate under Rule 23 that he is an adequate class representative. Acknowledging this burden, Cardona endeavored to address this element of class certification in a fashion which plainly indicated that he wishes to be the architect of this class claim that he would advance on behalf of his fellow inmates. Indeed, Cardona touted his ability to serve as the legal representative for this far-reaching inmate class. As Cardona stated in his class certification motion:

> Regarding the adequacy requirements, the plaintiff is familiar with the federal legal system having represented himself. . . Plaintiff persuasively argued that two counts of the indictment against him should be dismissed and he was acquitted on the third count after a jury trial. Plaintiff has additionally filed a number of civil cases *pro se.*

(Doc. 50, ¶4)

The defendants have responded to this class certification motion, opposing this request (Doc. 66), and Cardona has allowed the time for filing a reply brief in support of this motion to lapse.[2]  Therefore the motion is ripe for resolution.

For the reasons set forth below, it is recommended that this motion be denied without prejudice.

## II.   Discussion

### A.   This Motion For Class Certification Should Be Denied Since Cardona, a Federal Inmate, Is Not an Adequate Class Representative

Jose Cristobal Cardona, a federal inmate, now seeks leave of court to act  as the representative of an inmate class action.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure there are four prerequisites which must be met before Cardona's proposed class action may be certified.  To obtain class certification Cardona must show that:

> 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

---

[2]We note parenthetically that Cardona's failure to abide by the extended briefing schedule set by the Court for resolution of this motion is itself a circumstance which casts doubt on the adequacy of his representation of class interests in this litigation.

See Fed.R.Civ.P. 23(a).   These requirements are set forth in Rule 23 in the conjunctive.   Therefore, a district court can only certify a class if all four requirements of Rule 23(a) are met.   See  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 n.6 (3d Cir. 2008); In re Prudential Ins. Co. of America Sales Practice Litigation, 148 F.3d 283, 308-09 (3d Cir. 1998).   Since all four of these elements must be met before a class action may be certified, the failure to satisfy any single element is fatal to Cardona's motion for class certification.

In this case, turning first to Rule 23's requirement that "the representative parties will fairly and adequately protect the interests of the class," we find that Cardona cannot serve as a fair and adequate class representative at this time.   In this regard, we note that Cardona clearly intends to personally direct this class action. Indeed, Cardona has stated as much, averring with respect to "the adequacy requirements, [that] the plaintiff is familiar with the federal legal system having represented himself. . . Plaintiff persuasively argued that two counts of the indictment against him should be dismissed and he was acquitted on the third count after a jury trial. Plaintiff has additionally filed a number of civil cases *pro se*." (Doc. 50, ¶4)

Cardona's expressed desire as a federal inmate to be the personal architect of this proposed inmate class action, in turn, runs afoul of a settled tenet of case law in this field.   It is well-settled that: "a  prisoner proceeding *pro se* may not seek relief on behalf of his fellow inmates. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th

Cir.1975) ("[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."); <u>see also</u> <u>Wallace v. Smith</u>, 145 Fed. Appx. 300, 302 (11th Cir.2005)." <u>Alexander v. New Jersey State Parole Bd</u>,. 160 F.App'x 249, 250 (3d Cir. 2005). Thus, "*pro se* litigants are generally not appropriate as class representatives. <u>See</u> <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 (4th Cir.1975)." <u>Hagan v. Rogers</u>, 570 F.3d 146, 159 (3d Cir. 2009). Since Cardona, a *pro se* inmate litigant plainly intends to serve as this class representative, his request for class certification does not meet this threshold consideration that the representative party will fairly and adequately protect the interests of the class, and this *pro se* request for class certification should be denied.

Nor can Cardona save this request by casually suggesting as he does in his motion that "in its discretion this court may appoint counsel to represent a viable class." (Doc. 50, ¶4) Cardona is not represented by counsel, has not requested counsel, and his class certification motion clearly indicates that Cardona, a *pro se* inmate, wishes to personally guide and direct this proposed class action, something he is not entitled to do since: "[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action." <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 (4th Cir.1975) .

Moreover, Cardona cannot show that appointment of counsel is appropriate in this case with respect to the narrow and specific class action claim he advances

relating to double-celling of inmates in the Special Management Unit at the Lewisburg Penitentiary.   With respect to the appointment of counsel, it is clear that, in this setting, there is neither a constitutional nor a statutory right to counsel for inmate civil litigants.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993).   Notwithstanding this lack of a constitutional or statutory right to appointed counsel, in a civil case, 28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to employ counsel."   A district court's appointment of counsel pursuant to this statute is discretionary and must be made on a case-by-case basis.  Tabron, 6 F.3d at 157-58. The exercise of this discretion, however, is guided by certain basic principles.  Gordon v. Gonzalez, 232 F. App'x 153, 156 (3d Cir. 2007).  In Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997), the United States Court of Appeals outlined the standards to be considered by courts when reviewing an application to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1).  In passing on such  requests we must first:

> "[D]etermine[] that the plaintiff's claim has some merit, then [we] should consider the following factors: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; [and] (6) whether the plaintiff can attain and afford counsel on his own behalf."

Parham v. Johnson, 126 F.3d at 457.

Our analysis of these factors suggests that the Court should not *sua sponte* appoint counsel in this case at the present time. At the outset, we believe that we should defer any such decision until after we have had further opportunity in connection with the defendants' pending, and potentially dispositive, motion to dismiss to assess the first issue which arises in these cases, the question of whether the plaintiff's claims have arguable legal merit warranting further proceedings with the assistance of counsel. In our view, it would be inappropriate to appoint counsel until we have the opportunity to conclude this initial merits analysis.

This principle applies with particular force to the inmate double-celling claim which forms the foundation of Cardona's motion for class certification. With respect to this legal claim, which is the underpinning of this proposed class action, we note that in the past inmates have frequently sought relief similar to that demanded by Cardona here, compelling prison officials to provide them with specific housing accommodations. Yet, such requests, while often made, are rarely embraced by the courts. Instead, courts have routinely held that prisoner-plaintiffs are not entitled to compel prison officials to provide them with specific relief and services pending completion of their lawsuits. Thus, courts have rejected inmate requests for injunctions mandating specific housing conditions for prisoners. See, e.g., Messner v. Bunner, No. 07-112E, 2009 WL 1406986 (W.D.Pa. May 19, 2009)(denying inmate preliminary injunction); Brown v. Sobina, No. 08-128E, 2008 WL 4500482 (W.D.Pa.

Oct. 7, 2008)(denying inmate preliminary injunction); <u>Emile v. SCI-Pittsburgh</u>, No.
04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006) (denying inmate preliminary
injunction).

In particular, it is doubtful that Cardona can show an entitlement to any
equitable relief compelling prison officials to give him, or members of his putative
inmate class, single cell housing in the Lewisburg Penitentiary Special Management
Unit.  Indeed, courts have repeatedly held that prisoners at this facility are not entitled
as a matter of right to such favorable single-cell housing.  Indeed, identical assertions
have been flatly rejected by this Court.  For example, in <u>Harrison v. Bledsoe</u>, No. 09-
1600, 2010 WL 186804 (M.D. Pa. Jan. 13, 2010), this Court was presented with a
claim by a Lewisburg SMU inmate that conditions at the SMU amounted to cruel and
unusual punishment in violation of the Eighth Amendment.  In terms that are equally
applicable here, the Court rejected that claim holding instead that:

> Eighth Amendment claims must satisfy both an objective component (the
> deprivation must be sufficiently serious) and a subjective component (the
> defendant must have been deliberately indifferent). <u>Young v. Quinlan</u>,
> 960 F.2d 351, 359-60 (3d Cir.1992). As to the objective component, the
> Eighth Amendment is violated only when an inmate is deprived of "the
> minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452
> U.S. 337, 347(1981). As to the subjective component, the question is
> whether the prison official acted with deliberate indifference to the
> inmate's health or safety. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).
> "[A] prison official may be held liable under the Eighth Amendment for
> denying humane conditions of confinement only if he knows that inmates
> face a substantial risk of serious harm and disregards that risk by failing
> to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S.

–9–

825, 847 (1994). Double celling inmates is not *per se* unconstitutional. <u>Rhodes, supra</u>, 452 U.S. at 352. Doubling celling may, however, amount to cruel and unusual punishment if combined with other adverse conditions. <u>Nami v. Fauver</u>, 82 F.3d 63, 67 (3d Cir.1996). Considerations that are relevant in determining if double celling violates the Eighth Amendment "include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such a plumbing, ventilation, and showers." <u>Id</u>. The plaintiff alleges that he has been in the SMU since June of 2008, that he is double celled for twenty-three hours a day and that such double celling leads to tension and stress. The plaintiff, however, has not alleged the size of his cell in the SMU, and, apart from alleging that the temperature in the cells is higher than outside temperatures, he has not alleged the physical condition of his cell in the SMU. The plaintiff alleges generally that the inmates in the SMU are violent and that double celling leads to tension. However, he has not alleged that he suffered a substantial injury from another inmate or facts from which it can reasonably be inferred that he is in imminent danger of substantial injury as a result of being double celled. The plaintiff's allegations regarding the conditions of the SMU, even when combined with the other alleged restrictions imposed on inmates in the SMU, do not raise a plausible inference that the plaintiff was denied the minimal civilized measure of life's necessities or that the defendants acted with deliberate indifference to his health or safety. Accordingly, the amended complaint fails to state an Eighth Amendment claim upon which relief may be granted.

<u>Harrison v. Bledsoe</u>, No. 09-1600, 2010 WL 186804, *5-6 (M.D.Pa. Jan 13, 2010).

Similarly, in <u>Mitchell v. Dodrill</u>, 696 F. Supp. 2d. 454 (M.D. Pa. 2010) this Court expressly rejected a claim by a Lewisburg SMU inmate that double-celling prisoners in this facility violated the Eighth Amendment, stating that:

It is well-settled that double celling inmates is not *per se* unconstitutional. <u>Rhodes</u>, 452 U.S. at 348. <u>See also</u> <u>Harrison v. Bledsoe</u>, Civ. No. 1:09-cv-01600, 2010 WL 186804, at *6 (M.D.Pa. Jan. 13, 2010)

(finding no Eighth Amendment claim where the plaintiff alleges he is double-celled for twenty-three hours a day in SMU and that such double-celling leads to tension and stress); Henry v. Wilson, Civ. No. 2:05-CV-648, 2007 WL 2746717, at *5 (W.D.Pa. Sept. 17, 2007) (denying Eighth Amendment claim where the plaintiff fails to produce any evidence that his conditions in a double cell deprived him of any basic human need). Double celling may, however, amount to cruel and unusual punishment if combined with other adverse conditions. Nami v. Fauver, 82 F.3d 63, 67 (3d Cir.1996). Considerations that are relevant in determining if double celling violates the Eighth Amendment "include the length of confinement, the amount of time prisoners spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers." Id. Here, [plaintiff] alleges that he has been forced to live in a cell that is too small for two inmates. However, he does not allege that he was singled out for the double-celling or that his health or life is or was endangered by the condition. Further, he has not shown that he suffered a substantial injury from another inmate or facts from which it can be reasonably inferred that he is in imminent danger of substantial injury as a result of being double celled. Since the court has already determined that the other conditions complained of do not deprive [plaintiff] of "the minimal civilized measure of life's necessities," Griffin v. Vaughn, 112 F.3d at 709, nor indicate that prison officials "knew of and disregarded an excessive risk to [Mitchell's] health or safety," Farmer, 511 U.S. at 837, [plaintiff's] disappointment here with the double-celling practice in the SMU does not amount to cruel and unusual punishment.

Mitchell v. Dodrill, 696 F.Supp.2d 454, 468 -469 (M.D.Pa. 2010). See also, Hunter v. Bledsoe, No. 10-927, 2010 WL 3154963 (M.D. Pa. Aug. 9, 2010)(held SMU inmate has no constitutional right to single-cell status). Thus, Cardona's requests for class-wide injunctive relief compelling single cell housing may well fail because he cannot meet the first requirement for such relief; he cannot "actually succeed[] on the merits

of [his Eighth Amendment] claim." <u>Chao v. Rothermel</u>, 327 F.3d 223, 228 (3d Cir. 2003)(citation omitted).

In light of this settled caselaw, rejecting claims that are identical to the putative class claims advanced here by Cardona, it does not appear unclear that this *pro se* inmate can demonstrate that counsel should be appointed to represent this putative class.  In any event, it is abundantly clear that Cardona has not requested the appointment of such counsel, and that any ruling on such a request, if it is made, should await resolution of the pending, and potentially dispositive, motion to dismiss filed by the defendants.  Resolution of that motion will inform the Court regarding whether there are any potentially viable class claims which remain in the particular lawsuit.[3]

------

[3]Given that Cardona has not moved for appointment of counsel, and we find that appointment of counsel is not appropriate here, Cardona may not rely upon <u>Hagan v. Rogers</u>, 570 F.3d 146 (3d Cir. 2009), to support this class certification motion. In <u>Hagan</u>, the putative class plaintiffs expressly sought both class certification and appointment of counsel. The appellate court held that the district court erred when it both denied the class certification motion on adequacy of representation grounds, and deferred ruling on the motion for appointment of counsel, which could have conceivably cured the representation issues in this proposed class action. In stark contrast to the unusual circumstances presented in <u>Hagan</u>, in this case Cardona has not moved for appointment of counsel, but rather has asserted his personal desire to manage this class litigation. Furthermore, unlike the district court in <u>Hagan</u>, we have affirmatively concluded that appointment of counsel would be improvident at this time until the Court has had a full opportunity to consider the first factor that is relevant to such an appointment, the potential merits of the plaintiff's claims.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for class certification be DENIED (Doc. 50), without prejudice to the plaintiff endeavoring to seek class certification, if appropriate, following resolution of the pending motion to dismiss filed in this matter.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of January 2012.

_S/Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge