IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE CRISTOBAL CARDONA, | : | CIVIL NO. 3:CV-11-0054 |
| Plaintiff, | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | |
| B.A. BLEDSOE, et al., | : | |
| Defendants | : | |

## MEMORANDUM

## I.    Introduction

Plaintiff Jose Cristobal Cardona ("Plaintiff" or "Cardona"), an inmate presently confined

at the United States Penitentiary Lewisburg ("USP Lewisburg") in Lewisburg, Pennsylvania,

initiated the above action pro se by filing a Bivens[1]-styled civil rights Complaint under the

provisions of 28 U.S.C. § 1331. (Doc. 1.)  This case is proceeding on Cardona's Amended

Complaint (Doc. 19), filed on June 7, 2011.  Service of the Amended Complaint was directed by

Order dated June 27, 2011 (Doc. 25).  After obtaining an extension of time, on October 31,

2011, a Motion to Dismiss and for Summary Judgment was filed on behalf of Defendants (Doc.

68), and presently is before the Court for disposition.

For the reasons set forth herein, the Motion to Dismiss will be granted to the extent that

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388
(1971).  Bivens actions are the federal counterpart to § 1983 claims brought against state
officials.  Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (citing Brown v. Philip Morris
Inc., 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relied upon the principles
developed in the case law applying section 1983 to establish the outer perimeters of a Bivens
claim against federal officials."  Schrob v. Catterson, 948 F.2d 1402, 1409 (3d Cir. 1991).

the claims against Defendants Lappin, Watts, Keffer, Townsend, Bracy, Maldonado, and Dodrill

will be dismissed for lack of personal jurisdiction, and the Motion for Summary Judgment will be

granted as to all remaining Defendants.  In addition, as more fully explained below, Cardona's

other Motions that presently are pending, specifically his Motion to Compel (Doc. 106), Motion

for Partial Summary Judgment (Doc. 114), Motion to Compel Defendants to Allow Plaintiff to

Prepare Documents Related to this Action Electronically (Doc. 120), and Motion for Evidentiary

Hearing (Doc. 125), will be denied.

## II.    Procedural Background

Cardona initiated this action on January 7, 2011.  At the time of filing, Cardona filed an

application for leave to proceed in forma pauperis in this matter.  (Doc. 2.)  By Memorandum

and Order dated May 12, 2011, the Honorable James M. Munley, to whom this case then was

assigned[2], determined that Cardona has been barred from proceeding in forma pauperis under

the provisions of 28 U.S.C. § 1915(g)[3] and that he had failed to demonstrate that he was in

---

[2]This case was re-assigned to the undersigned on November 29, 2011.

[3]Under § 1915(g), a federal civil action by a prisoner proceeding in forma pauperis is barred if he or she:

> has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

imminent danger of serious physical harm so as to avoid the application of the three strikes provision. (Doc. 12.) Judge Munley therefore denied Cardona's application for leave to proceed in forma pauperis and directed him within twenty-one (21) days to pay the remaining balance on the $350.00 filing fee to avoid dismissal of his case. (Id.)

After obtaining an extension of time, on June 7, 2011, Cardona paid the remaining balance on the filing fee. (See Doc. 17.) He also filed an Amended Complaint containing claims stemming from events that allegedly occurred during his confinement in the Special Management Unit ("SMU") Program at USP Lewisburg. (Doc. 19.) In his Amended Complaint Cardona makes allegations of constitutional violations relating to the following: 1) his designation to the SMU Program; 2) a lack of adequate living space as a result of double celling; 3) a ban on "contact visits"; 4) limits on telephone calls; 5) a lack of a separate segregation unit; 6) the denial of meaningful review of his status in the SMU Program in violation of his right to due process; 7) reduced commissary; 8) the denial of work performance pay; 9) the denial of access to legal research and jailhouse lawyers; 10) the denial of his possession of his personal law books; 11) the circumstances surrounding a March 15, 2010 cell fight; 12) the lack of a separate "SHU" unit; 13) a lack of psychology services; 14) an alleged conspiracy by Defendants Lappin, Norwood, Watts, Bledsoe, and Dodrill to murder inmates through double celling; 15) the inability to complete SMU program/workbook assignments due to a psychological disability; 16) the failure of staff to file his "grievances"; 17) alleged retaliation for filing grievances, including being "set back" in SMU phases; 18) a denial of access to the

3

courts; 19) an alleged conspiracy by Defendants Keffer, Townsend, Maldonado, Bracy, and

Watts to deny his access to the courts; 20) the denial of a $50.00 "incentive program" reward;

21) violations of the Administrative Procedures Act ("APA") in the creation of the SMU Program;

and 22) unlawful visual (strip) searches.  (Doc. 19 at 2-4; 9-34.)[4]

Named as Defendants in the Amended Complaint are B.A. Bledsoe, Warden; D.

Hudson, Associate Warden; B Trate, Captain; L. Karpen, Chief Psychologist; D. Mink, Staff

Psychologist; P. Lizardi, Correctional Counselor; B. Hamilton, Case Manager; H. Birdsall,

Correctional Treatment Specialist; J. Fleming, Lieutenant; C. Anderson, Correctional Officer;

J.L. Norwood, NERO Regional Director; Harley Lappin, Federal Bureau of Prisons ("BOP")

Director (retired); H. Watts, National Inmate Appeals Administrator; J. Keffer, Warden, FMC

Carswell; L. Townsend, Unit Manager, USP Pollack; D. Bracy, SMU Hearing Administrator,

USP Pollack; G. Maldonado, SCRO Regional Director, D. Scott Dodrill, Assistant Director

(retired); Attorney General Eric Holder; and, the BOP.  (Id. at 1, 4-8.)

After obtaining an extension of time to respond to the Complaint, on October 31, 2011,

the instant Motion to Dismiss and for Summary Judgment was filed on behalf of Defendants.

(Doc. 68.)  Defendants requested and were granted an extension of time to file their papers in

support of their Motion, and on November 21, 2011, Defendants filed a supporting brief (Doc.

76), statement of material facts (Doc. 77) and supporting exhibits (Docs. 76-1 through 76-7).

4

---

[4]Throughout this Memorandum, citations to page numbers of documents filed to the docket in this case are to the numbers generated by the CM/ECF System.

After requesting several extensions of time, which were granted, on March 19, 2012, Cardona filed an opposition brief (Doc. 112), "Statement of Disputed Facts" (Doc. 111), a Declaration (Doc. 110), and supporting exhibits (Doc. 112-1). Following a request for an extension of time, which was granted, on May 14, 2012, Defendants filed a reply brief. (Doc. 124.)

The following Motions also are fully briefed and ripe for disposition and will be disposed of herein: (1) Plaintiff's Motion to Compel (Doc. 106), filed on March 7, 2012; (2) Plaintiff's Motion for Partial Summary Judgment (Doc. 114), filed on March 26, 2012; (3) Plaintiff's Motion to Compel Defendants to Allow Plaintiff to Prepare Documents Related to this Action Electronically (Doc. 120), filed on April 17, 2012; and (4) Plaintiff's Motion for an Evidentiary Hearing (Doc. 125), filed on May 18, 2012.

III.     **Motion to Dismiss**

Defendants submit that this Court lacks personal jurisdiction over Defendants Lappin, Watts, Keffer, Townsend, Bracy, Maldonado, and Dodrill, and that the claims against them in the Amended Complaint should therefore be dismissed. (See Doc. 76, Defs.' Br., at 20-21; Doc. 124, Defs.' Reply Br., at 7.)

Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322, "permits Pennsylvania courts to exercise personal jurisdiction over nonresident defendants 'to the constitutional limits of the Due Process Clause of the Fourteenth Amendment.'" Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (quoting Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). The Due Process Clause requires that

nonresident defendants have "certain minimum contacts with the forum state such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice."

Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 299-300 (3d Cir. 2008) (quoting Int'l Shoe Co. v.

Washington, 326 U.S. 310, 316 (1945)).  "Having minimum contacts with another state provides

'fair warning' to a defendant that he or she may be subject to suit in that state."  Id. at 300

(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

       Federal courts have recognized two types of personal jurisdiction- general and specific.

See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).  General jurisdiction is appropriate

when the defendant's contacts with the forum are "continuous and systematic" and when the

cause of action "arises from the defendant's non-forum related activities."  Vetrotex Certainteed

Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 151 (3d Cir. 1996).  Specific

jurisdiction is properly exercised when the plaintiff's cause of action arises from the defendant's

forum-related activities, "such that the defendant 'should reasonably anticipate being haled into

court there.'"  Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297

(1980)).

       In connection with the instant Motion, Defendants have submitted the Declaration of L.

Cunningham, a Supervisory Attorney at USP Lewisburg, in which he declares that Defendants

Lappin, Watts, Keffer, Townsend, Bracy, Maldonado, and Dodrill have confirmed that they

neither own property nor conduct business in the Commonwealth of Pennsylvania and that the

6

Court therefore should dismiss the claims against them in the Amended Complaint.[5] (See Doc. 76-1, Cunningham Decl., at 3 ¶ 4; Doc. 76, Defs.' Br., at 20-21.) "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992) (citations omitted). In opposition to Defendants' Motion, Cardona argues that "this Court has specific jurisdiction because the cause of action is related to and arises from Defendants' forum related activities. They should reasonably expect to be hailed [sic] into court for their participation in the far reaching conspiracy of forced participation in [the] (SMU) program with intent to defraud the United States of America in violation of civil rights and false claims acts." (See Doc. 112, Pl.'s Opp'n Br., at 14-15.)

In presenting his argument, Cardona fails to explain how these Defendants have any contacts with this forum such that they reasonably would anticipate being haled into court here. See Vetrotex, supra, 75 F.3d at 151. In relying solely on his unsupported and vague allegation from his Amended Complaint that Defendants Lappin, Watts, Keffer, Townsend, Bracy, Maldonado, and Dodrill are participating in a conspiracy, Cardona fails to prove by a preponderance of the evidence that these Defendants have the requisite minimum contacts to subject them to the jurisdiction of this Court. Thus, we conclude that we lack personal jurisdiction over Defendants Lappin, Watts, Keffer, Townsend, Bracy, Maldonado, and Dodrill,

---

[5]We note that the Court may consider affidavits in determining the existence of personal jurisdiction. See Patterson ex rel. Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990).

and we therefore shall grant Defendants' Motion to Dismiss to the extent that Cardona's claims

against these Defendants in his Amended Complaint will be dismissed under the provisions of

Federal Rule of Civil Procedure 12(b)(6).

## IV.    Motion for Summary Judgment

Defendants argue that they are entitled to judgment as a matter of law as to all but four

(4) of Cardona's claims on the basis of his failure to exhaust his administrative remedies. (See

Doc. 76, Defs.' Br., at 14-19; Doc. 124, Defs.' Reply Br., at 4-6; Doc. 112, Pl.'s Opp'n Br., at 11-

12.) Defendants also argue that they are entitled to judgment as a matter of law as to

Cardona's claims concerning his designation to the SMU because the record demonstrates that

he was properly designated to the SMU (Doc. 76 at 23-25; Doc. 124 at 8; Doc. 112 at 9-11);

Cardona has failed to establish that the practice of double celling at the USP Lewisburg SMU

results in a constitutional violation (Doc. 76 at 25-27; Doc. 124 at 9; Doc. 112 at 2-7); Cardona

has failed to establish the requisite personal involvement of Defendant Trate with respect to his

claim concerning visual searches (Doc. 76 at 27-29; Doc. 124 at 10; Doc. 112 at 15); the record

demonstrates that Cardona received adequate access to the law library (Doc. 76 at 29-31; Doc.

124 at 10-11; Doc. 112 at 15-16); and Cardona's Eighth Amendment claim for monetary

damages based upon the March 15, 2010 disciplinary incident that resulted in Cardona's loss of

good conduct time is barred by the favorable termination rule (Doc. 76 at 21-23; Doc. 124 at 7-

8; Doc. 112 at 7-9.) In examining the record developed on summary judgment, we shall apply

the following standard.

8

## A.    Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. Id. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." Id.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the

moving party's contention that the facts entitle it to judgment as a matter of law. Anderson, 477
U.S. at 256-57. The non-moving party "cannot rely on unsupported allegations, but must go
beyond pleadings and provide some evidence that would show that there exists a genuine
issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). Arguments
made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to
defeat a summary judgment motion." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772
F.2d 1103, 1109-10 (3d Cir. 1985). Rather, a party asserting that a fact is genuinely disputed
must support that assertion by "citing to particular parts of materials in the record, including
depositions, documents, electronically stored information, affidavits or declarations, stipulations
(including those made for purposes of the motion only), admissions, interrogatory answers, or
other materials." Fed. R. Civ. P. 56(c)(1)(A).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh
the evidence and determine the truth of the matter but to determine whether there is a genuine
issue for trial." Anderson, 477 U.S. at 249. Thus, summary judgment should not be granted
when there is a disagreement about the facts or the proper inferences that a factfinder could
draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982). Still,
"the mere existence of *some* alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the requirement is that there be no
*genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

B.    **Statement of Material Facts**

1.    **Facts Regarding Cardona's Exhaustion of Administrative Remedies**

Cardona has been incarcerated at USP Lewisburg since April 15, 2009. (Doc. 76-1,

Cunningham Decl., at 3 ¶ 2.) On October 26, 2011, a search of BOP records was conducted to

determine whether or not Cardona had exhausted available administrative remedies regarding

the issues he raises in his Amended Complaint. (Doc. 77, Defs.' Statement of Material Facts

("SMF"), ¶ 1; Doc. 76-1 at 4 ¶ 8; Attach. 1, SENTRY Printout, Doc. 76-1 at 9-16.) As of that

date, Cardona had filed fifty-one (51) administrative remedies on issues relating to his

confinement at USP Lewisburg. (Doc. 76-1 at 4 ¶ 8.) Of those fifty-one (51) remedies, only

eleven (11) raise issues asserted in the Amended Complaint. (Doc. 77 ¶ 3; Doc. 76-1 at 4-6

¶¶ 9-18; Doc. 76-1 at 9-16.)

a.    **Exhausted Issues**

BOP records show that Cardona exhausted his administrative remedies with regard to

the following issues: (1) his appeal of his placement in the SMU Program; (2) his complaint

relating to his cell size and double celling; (3) a visual search is unconstitutional; (4) his

complaint that he has not been afforded adequate access to the law library; and, (5) his

challenge to the DHO proceeding regarding the March 15, 2010 cell fight.[6] (Doc. 77 ¶ 4; Doc.

---

[6]Cardona also exhausted the following issues that are not specifically raised in his
Amended Complaint: (1) his complaints relating to the purchase of a winter coat; and (2) an
appeal concerning a correspondence rejection. (Doc. 77 ¶ 4; Doc. 76-1 at 4-6 ¶¶ 9-18; Doc.
76-1 at 9-16.)

76-1 at 4-6 ¶¶ 9-18; Doc. 76-1 at 9-16.) The details of Cardona's exhausted administrative remedies relating to claims in the Amended Complaint are as follows:

Cardona exhausted his claim regarding his placement in the SMU through his filing of administrative remedy 545705-A1, which was denied at the Central Office level on October 22, 2009. (Doc. 77 ¶ 4 a.; Doc. 76-1 at 4 ¶ 9; Doc. 76-1 at 11.)

Cardona exhausted his claim that USP Lewisburg cells are inadequate and too small by filing administrative remedy 545266-A1, which was denied at the Central Office level on October 8, 2010. (Doc. 77 ¶ 4 b; Doc. 76-1 at 4-5 ¶ 10; Doc. 76-1 at 11.)

Cardona exhausted his claim that visual searches (strip searches) are unconstitutional by filing administrative remedy 597608-A1, which was denied at the Central Office level on February 7, 2011. (Doc. 77 ¶ 4 c; Doc. 76-1 at 5 ¶ 11; Doc. 76-1 at 14.)

Cardona exhausted his claim regarding his request for more time in the law library by filing administrative remedy 585824-A1, which was denied at the Central Office level on December 14, 2010. (Doc. 77 ¶ 4 d; Doc. 76-1 at 5 ¶ 12; Doc. 76-1 at 12.)

Cardona exhausted his claims relating to the March 15, 2010 cell fight by filing administrative remedies 592227-A1 and 593441-A2, which were denied at the Central Office level on December 16, 2010 and January 20, 2011, respectively. (Doc. 77 ¶ 4 g; Doc. 76-1 at 6 ¶ 18; Doc. 76-1 at 12-13.)

### b.    Unexhausted Issues

BOP records reflect as follows with respect to administrative remedies that have not

been fully exhausted by Cardona:

Cardona filed administrative remedy 619037-A1 on March 28, 2011 regarding an allegation that he was "suffering psychological effects" from being double celled. (Doc. 77 ¶ 5 a; Doc. 76-1 at 5 ¶ 15; Doc. 76-1 at 14.)  This request was rejected by the Central Office on April 1, 2011 along with a notification to Cardona that he must complete the appeal process at the Regional Level before appealing to the Central Office and referring him to his Unit Team for assistance. (Id.)  BOP records as of the time of filing of Defendants' Motion reflected that Cardona had not completed the exhaustion procedure on this issue. (Id.)

Cardona also filed administrative remedies 623687-A1 and 623687-A2 on March 28, 2011 and April 19, 2011, respectively.  (Doc. 77 ¶ 5 b; Doc. 76-1 at 5 ¶ 16; Doc. 76-1 at 15.) The first request was rejected because Cardona failed to attach the proper copies of his institution and regional appeals (SENTRY Rejection Code: IRQ RSA). (Id.)  The second request was closed as moot (SENTRY Code: MOT). (Id.)

Cardona also filed administrative remedy 629762-A1 on May 18, 2011 alleging that the "BOP has no right to xray him against his will." (Doc. 77 ¶ 5 c; Doc. 76-1 at 6 ¶ 17; Doc. 76-1 at 16.)  This remedy is awaiting response, and therefore is unexhausted. (Id.)

2.    **Facts Regarding Cardona's Disciplinary History and Designation to SMU Program**

A review of Cardona's disciplinary history indicates that, as of July 29, 2011, he had received 70 disciplinary incident reports while in BOP custody. (Doc. 77 ¶ 9; Defs.' Attach. 3,

SENTRY Record- Chronological Disciplinary History, Doc. 76-1 at 38-40, Doc. 76-2 at 1-19.)

Designation to a SMU may be considered for any sentenced inmate whose interaction requires greater management to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public, because the inmate meets any of the following criteria:

> a. Participated in disruptive geographical group/gang-related activity.
>
> b. Had a leadership role in disruptive geographical group/gang-related activity.
>
> c. Has a history of serious and/or disruptive disciplinary infractions.
>
> d. Committed any 100-level prohibited act, according to 28 C.F.R. part 541, after being classified as a member of a Disruptive Group pursuant to 28 C.F.R. part 524.
>
> e. Participated in, organized, or facilitated any group misconduct that adversely affected the orderly operation of a correctional facility.
>
> f. Otherwise participated in or was associated with activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public.

(Doc. 77 ¶10; Doc. 76-2 at 20 (citing BOP Program Statement ("P.S.") 5217.01[7]).)

In accordance with the referral procedures set forth in P.S. 5217.01, Cardona was provided notice that he would be referred to the SMU on February 27, 2009. (Doc. 77 ¶ 11; Doc. 76-1, Cunningham Decl., at 6 ¶ 22.) He was provided notice that he would have a SMU hearing on March 2, 2009. (Doc. 77 ¶ 12; Doc. 76-2 at 22, Attach. 5, Notice to Inmate of SMU

---

[7]See BOP Program Statements, available at http://www.bop.gov

Referral.) The notice referenced nine disciplinary incident reports that Cardona had received

while he was confined at the United States Penitentiary Pollock ("USP Pollock") in Pollock,

Louisiana. (Doc. 77 ¶ 13; Doc. 76-2 at 23.) Eight of the nine incident reports were for 100 level

prohibited acts, the "greatest severity" of prohibited acts. (Doc. 77 ¶ 14; Doc. 76-2 at 23.) The

one other referenced incident report was for a "high" category" prohibited act (200 level series).

(Doc. 77 ¶ 15; Doc. 76-2 at 23.) Contrary to Cardona's statements in his Amended Complaint,

possession of drugs/drug related materials and refusing a urine test are both 100 level, greatest

severity prohibited acts.[8] (Doc. 77 ¶ 16 (citing 28 C.F.R. § 541.13, Table 3, Prohibited Acts and

Disciplinary Severity Scale).) The SMU referral notice provided to Cardona also included

information that the BOP had "documented Cardona a member of 'Mexikanemi'". (Doc. 77

¶ 17; Doc. 76-2 at 22-23.)

BOP Program Statement 5217.01, Special Management Units, provides, in pertinent

part, that the designation to the SMU goes to the Unit Team, then to the Warden, and then to

the Regional Director of the BOP. (Doc. 77 ¶ 42; BOP P.S. 5217.01[9].) The Hearing

Administrator determines whether the inmate meets the criteria for the SMU Program. (Doc. 77

¶ 43.) The Hearing Administrator prepares the form BP A0936, Hearing Administrator's Report

---

[8]Cardona states in his "Statement of Disputed Facts" that he has not possessed drugs
or drug related materials and that refusing to provide a urine test is not a disruptive infraction,
but fails to provide support for his statement with a reference to the record, and therefore, he
has not successfully refuted Defendants' statement. (See Doc. 111 at 3 § D ¶ 16.)

[9]See BOP Program Statements, supra n. 7.

on Referral for Designation to a Special Management Unit, and provides it to the Regional

Director. (Id. ¶ 44.) The Report provides a detailed explanation of the reasons for the Hearing

Administrator's findings, but does not include information that would jeopardize the safety,

security, or orderly operation of correctional facilities, or protection of the public. (Id. ¶ 45.) The

Regional Director considers whether, based on the Hearing Administrator's findings, the SMU

referral is necessary to ensure the safety, security, or orderly operation of Bureau facilities, or

protection of the public. (Id. ¶ 46.) The Regional Director includes a recommendation on the

Report and forwards it to the BOP's Designation and Sentence Computation Center ("DSCC").

(Id.)

Cardona was referred for a SMU hearing by Defendant Warden Keffer (then Warden of

USP Pollock). (Id. ¶ 47.) On February 27, 2009, Cardona received notice of the SMU referral

hearing. (Id. ¶ 48; Doc. 76-2 at 22-28.) The hearing was conducted by Defendant DHO Bracy

on March 2, 2009, and the Report indicates that Cardona appeared via video-conference.

(Doc. 77 ¶¶ 48, 49; Doc. 76-2 at 38.) Cardona was given the opportunity to make a statement,

which was documented by Defendant Bracy as follows:

> No contest. I don't dispute the Incident Reports, but consider that many are over
> two years old. I am appealing all the Incident Reports for code 112 in Federal
> Court.

(Doc. 77 ¶ 50; Doc. 76-2 at 38.)

Cardona also provided documentary evidence. The first piece of documentary evidence

was styled as "Cardona's Objections to the Hearing Referral for Designation to a Special

16

Management Unit." (Doc. 77 ¶ 51; Doc. 76-2 at 30, 39.) The Hearing Administrator noted that the document stated that "[i]t is Cardona's belief that he was referred for this hearing in retaliation by prison officials against me for pursuing grievances." (Doc. 77 ¶ 52; Doc. 76-2 at 30, 39.) Cardona also denied that he had participated in disruptive group activity or that he had a history of disruptive disciplinary infractions. (Id.) In addition, the Hearing Administrator quoted the following portion of Cardona's statement: "Failure to allow Cardona an adequate opportunity to present a well informed and conscience [sic] argument to the hearing administrator in charge of deciding whether to place Cardona in more restrictive confinement denies him the protections of due process." (Id.)

Cardona's second piece of documentary evidence, as noted by the SMU Hearing Administrator, was a seven page court document from a § 2241 habeas petition that he had filed in the United States District Court for the Western District of Louisiana, captioned as Cardona v. Keffer, Civil No. 08-1556, challenging disciplinary proceedings initiated against Cardona at USP Pollock. (Doc. 77 ¶ 53; Doc. 76-2 at 33-36, 39.)

In his Report, the SMU Hearing Administrator also noted that Cardona had the assistance of a staff member for purposes of helping him compile documentary evidence or witness statements. (Doc. 77 ¶ 54; Doc. 76-2 at 39.) At the conclusion of the hearing, Defendant Bracy found, "This inmate meets the following criteria for designation to a Special Management Unit" including that Cardona "participated in a disruptive geographical group/gang related activity" and "has a history of serious and disruptive disciplinary infractions." (Doc. 77

17

¶¶ 55-56; Doc. 76-2 at 39.) Defendant Bracy signed the Hearing Administrator's Report on

March 13, 2009. (Doc. 77 ¶ 57; Doc. 76-2 at 40.) A non-defendant staff member acting for

Regional Director Maldonado concurred in the findings and recommended Cardona for

designation to the SMU on March 24, 2009. (Doc. 77 ¶ 58; Doc. 76-2 at 41.) Defendant

Maldonado did not personally review or sign this recommendation. (Doc. 77 ¶ 59; Doc. 76-2 at

41.) DSCC staff approved Cardona's designation to the SMU on April 14, 2009. (Doc. 77 ¶ 60;

Doc. 76-2 at 41.)

### 3.    Facts Regarding Double Celling

The American Correctional Association ("ACA") conducts audits every three years of

BOP facilities to ensure that they are complying with association standards, which includes a

condition of confinement analysis. (Doc. 77 ¶ 18; Doc. 76-1 at 7, Cunningham Decl., ¶ 25.)

USP Lewisburg recently underwent its scheduled ACA audit and received re-accreditation on

August 8, 2011. (Doc. 77 ¶ 19; Doc. 76-1 at 7 ¶ 25; Doc. 76-3 at 1-2, Letter and ACA Press

Release.)

### 4.    Facts Regarding Visual Searches

BOP P.S. 5521.05, Searches of Housing Units, Inmates, and Inmate Work Areas,

defines a "visual search" as a "visual inspection of all body surfaces and body cavities." (Doc.

77 ¶ 20; Doc. 76-7, Trate Decl., at 22 ¶ 4; BOP P.S. 5521.05[10].) P.S. 5521.05 further provides

---

[10]See BOP Program Statements, supra, n. 7.

that "staff may conduct a visual search where there is reasonable belief that contraband may be concealed on a person, or a good opportunity for concealment has occurred." (Doc. 77 ¶ 21; Doc. 76-7 at 22 ¶ 4; BOP P.S. 5521.05.)  In the context of the SMU Program, where the majority of inmates have extensive disciplinary histories, many including the possession of weapons, drugs, or other contraband, the use of measures to ensure inmate accountability, including visual searches, is particularly important.  (Doc. 77 ¶ 22; Doc. 76-7 at 22 ¶ 5.)

In his Amended Complaint, Cardona complains that, on June 1, 2010, Defendant Trate subjected Cardona and his cellmate to "unconstitutional strip searches" on their way to and from recreation.  (Doc. 77 ¶ 23; Doc. 19, Amended Complaint, at 27 ¶ 115.)  A record of visual searches is maintained by BOP staff in a log book.  (Doc. 77 ¶ 23; Doc. 76-7 at 23 ¶ 6; Doc. 76-7 at 26, 27, copies of Log Book.)  A review of visual search records indicates that Cardona was visually searched on May 4, 2011 and May 9, 2011, but that these searches were not performed by Captain Trate, but were performed by staff members Gemberling, on May 4, and Good, on May 9.[11]  (See Doc. 76-7 at 22-23, Ex. 2, Trate Decl.; Doc. 76-7 at 30, 31, Visual Log Book Entries, at 32-33, Log Book Record.)

### 5.    Facts Regarding Law Library Access

---

[11]Although Cardona maintains in his "Disputed Statement of Facts" that the visual searches he is complaining about occurred from June 1 through August 10, 2010 and that Trate "eludes this issue in his affidavit," (see Doc. 111 at 4 § F), Cardona provides no reference to support his statement and therefore has not successfully disputed Defendants' evidence showing the only two visual searches of Cardona occurred on May 4 and May 9, 2011 and were not conducted by Defendant Trate.

USP Lewisburg provides law library access for inmates through an Electronic Law Library ("ELL"). (Doc. 77 ¶ 33; Doc. 76-1, Cunningham Decl., at 8 ¶ 31; Doc. 76-7 at 18, ELL Content.) Research materials and other documents may be accessed through on-line databases. (Doc. 77 ¶ 34; Doc. 76-1 at 8 ¶ 31.) The ELL has been installed and is being utilized at USP Lewisburg both for general population inmates and those housed in segregated housing units. (Doc. 77 ¶ 35; Doc. 76-1 at 8 ¶ 31.) All the segregated units are equipped with ELL access. (Doc. 77 ¶ 36; Doc. 76-1 at 8 ¶ 31.) Inmates are instructed to submit a request to the block officer to use the ELL. (Doc. 77 ¶ 37; Doc. 76-1 at 8 ¶ 31.) In the event an inmate requires material which is not on the ELL system, or needs copies of legal documents or forms, he may contact the Education Department, which is responsible for managing these requests. (Doc. 77 ¶ 38; Doc. 76-1 at 8 ¶ 31.) Usage of the ELL system now can be tracked electronically. (Doc. 77 ¶ 39; Doc. 76-1 at 8 ¶ 31.) The BOP "TRULINCS" Inmate Usage Report for inmate Cardona reflects that he signed on to the ELL system for significant periods of time from March 25, 2010 through October 7, 2011. (Doc. 77 ¶ 40; Doc. 76-1 at 7 ¶ 28; TRULINCS Report, Doc. 76-3 at 27-37, Doc. 76-4, Doc. 76-5 at 1-11; Doc. 112-1, Pl.'s Exs., at 31.)

### 6.    Facts Regarding March 15, 2010 Incident Report

As a result of his involvement in a March 15, 2010 cell fight, Cardona received disciplinary incident report # 1991132 for Fighting with Another Person in violation of Code 201. (Doc. 77 ¶ 6; Doc. 76-1 at 17-37, DHO Packet.) Cardona's DHO hearing on this incident was

held on May 11, 2010, and the DHO concluded that he committed the prohibited act as

charged. (Doc. 77 ¶ 7; Doc. 76-1 at 18-22, DHO Report.)  Cardona was sanctioned to twenty-

seven (27) days loss of good conduct time; thirty (30) days disciplinary segregation; and ninety

(90) days loss of commissary and visiting privileges. (Doc. 77 ¶ 8; Doc. 76-1 at 18-22.)

In his "Disputed Statement of Material Facts", Cardona states that the cell fight he was

involved in on March 15, 2010 was a "staged gladiator type fight" and that he was "forced inside

[the] cell with hostile inmate under threats of use of punitive restraints." (Doc. 111 at 3 § B. i.)

In support of his statement, Cardona cites to a copy of an affidavit he has provided from the

other inmate involved in the cell fight, dated March 1, 2012, stating that he attacked Cardona

on March 15, 2010. (Id. (citing Doc. 112-1 at 12).)  Cardona also alleges that he filed

administrative remedies alleging cruel and unusual punishment with regard to this incident and

cites to a copy of a response he received from the BOP Administrator of National Inmate

Appeals in support of his statement. (Doc. 111 at 3 § B. ii. (citing Doc. 112-1 at 23).)

## C.    Discussion

### 1.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims

through an administrative grievance process before filing suit in federal court. Specifically,

section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until such

21

administrative remedies as are available are exhausted." This "exhaustion requirement applies

to all inmate suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534

U.S. 516, 532 (2002). "'[I]t is beyond the power of this court- or any other- to excuse

compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or

any other basis.'" Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill

Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S.

749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory

exhaustion requirement." Nyhuis, 204 F.3d at 71. The PLRA also mandates that inmates

"properly" exhaust administrative remedies before filing suit in federal court.[12] Woodford v.

Ngo, 548 U.S. 81, 92 (2006).

   "Proper exhaustion demands compliance with an agency's deadlines and other critical

procedural rules because no adjudicative system can function effectively without imposing

some orderly structure on the course of its proceedings." Id. at 90-91. Such requirements

"eliminate unwarranted federal-court interference with the administration of prisons, and thus

seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally

---

   [12]Because a plaintiff's failure to exhaust is an affirmative defense, a plaintiff is not
required to allege in his complaint that he has exhausted administrative remedies. Ray v.
Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Rather, failure to exhaust must be pleaded and
proven by the defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525)).

Failure to comply with procedural requirements of the applicable prison's grievance system will

result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004)

("[P]rison grievance procedures supply the yardstick for measuring procedural default.") A

procedural default, "either through late or improper filings, bars the prisoner from bringing a

claim in federal court unless equitable considerations warrant review of the claim." Gallego v.

United States, Civil No. 1:02-CV-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

Defendants have demonstrated that Cardona exhausted his administrative remedies

with regard to the following issues: (1) his appeal of his placement in the SMU Program; (2) his

complaint relating to his cell size and double celling; (3) a visual search is unconstitutional; (4)

his complaint that he has not been afforded adequate access to the law library; and, (5) his

challenge to the DHO proceeding regarding the March 15, 2010 cell fight. (Doc. 77 ¶ 4; Doc.

76-1, Cunningham Decl.,at 4-5 ¶¶ 9-14, at 6 ¶ 18; Doc. 76-1 at 9-16.)

Defendants also have demonstrated that Cardona has not exhausted his administrative

remedies with respect to his remaining claims. (Doc. 77 ¶ 5; Doc. 76-1 at 5-6 ¶¶ 15-17; Doc.

76-1 at 9-16.)

In opposing the instant Motion, Cardona argues that he has exhausted all *available*

administrative remedies. (Doc. 112, Pl.'s Opp'n Br., at 11-12.) Specifically, he claims that

prison authorities thwarted his efforts to exhaust his administrative remedies and that his

administrative remedies should therefore be "presumed exhausted." (Id. at 12.) Cardona

23

submits that his Exhibits 25-30 support his argument. (See Doc. 112 at 12.) We summarize
the content of these exhibits as follows:

Exhibits 25, 26, and 28 consist of copies of correspondence Cardona labeled as inmate
requests directed to Defendants A.W. Young and Bledsoe dated December 27, 2010, January
19, 2011, and May 18, 2011 in which Cardona complained that his informal resolution attempts
were not being processed by Counselor Lizardi. (Doc. 112-1 at 25, 26, 28.)

Exhibits 27 and 29 consist of copies of responses provided by Bledsoe to Cardona
dated January 27, 2011 and May 23, 2011. (Doc. 112-1 at 27, 29.) In Exhibit 27, which is
Bledsoe's January 27, 2011 response to Cardona's January 19, 2011 correspondence, Bledsoe
states that a review of the administrative remedy log for Cardona's unit revealed that he had
filed one BP-8 to date that year and had received the response to it on January 14, 2011. (Id.
at 27.) Bledsoe also quotes Institution Supplement 1330.16A, Administrative Remedy
Program, which states as follows:

If an issue is not resolved verbally, the unit staff will provide the inmate with a
copy of Attachment A, Informal Resolution Attempt. The inmate will complete
section 1 on the front of the form and return Attachment A to his unit staff.

(Id. at 27.) Bledsoe then observes that, "[t]he documents you attached to your inmate request
and gave to your unit team were not completed on the correct form. Therefore, they were not
treated as Informal Resolution Attempt's [sic]." (Id.)

In Exhibit 29, which is Bledsoe's May 23, 2011 response to Cardona's May 18, 2011
correspondence, he states that a review of the administrative remedy log reveals that Cardona

24

had received two BP-8's since arriving at the J-unit on May 6, 2011 (just 12 days before the date of his correspondence), and that it does not appear that Cardona was being denied access to the administrative remedy process. (Id. at 29.)

Exhibit 30 is a copy of an affidavit by Cardona's former cellmate stating that Cardona was having problems with Counselor Lizardi not filing his grievances in January 2011. (Doc. 112-1 at 30.)

In replying to Cardona's argument, Defendants cite Smith v. Federal Bureau of Prisons' Director, 406 Fed. Appx. 578 (3d Cir. 2011). (See Doc. 124 at 5-6.) In Smith, the United States Court of Appeals for the Third Circuit affirmed the District Court's order granting summary judgment in favor of Defendants on the basis of failure to exhaust administrative remedies. In opposing the defendants' motion for summary judgment in that case, Smith acknowledged that he had failed to exhaust all of his administrative remedies, but he suggested that USP Lewisburg staff had precluded him from exhausting by removing his legal and administrative remedy documentation from his cell and destroying it. Smith, 406 Fed. Appx. at 581. In disposing of his appeal, the Third Circuit agreed that, where prison staff preclude an inmate from utilizing the institution's administrative remedies, they cannot be considered "available" for exhaustion purposes. Id. (citing Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Brown, supra, 312 F.3d at 112)). The Court then stated as follows: "Here, however, the record establishes that Smith filed numerous grievances, militating against a conclusion that he was precluded from utilizing the administrative process. The vague, unsubstantiated

25

allegations in Smith's complaint cannot overcome that conclusion." Id. (citing Pa. Prison Soc'y v. Cortes, 508 F.3d 156, 161 (3d Cir. 2007) ("[w]hile generalized allegations of injury may suffice at the pleading stage, a plaintiff can no longer rest on such 'mere allegations' in response to a summary judgment motion, but must set forth 'specific facts' by affidavit or other evidence."))

Cardona has not successfully demonstrated that Defendants made administrative remedies unavailable to him so as to show that there is a genuine issue of material fact as to his failure to exhaust administrative remedies as to all but the five (5) claims set forth above. Rather than showing that his efforts to exhaust were thwarted by Defendants, Cardona's exhibits instead reveal that in the instances in which he failed to follow proper procedure, Defendants justifiably declined to treat his submissions as administrative remedies. Indeed, the record reveals that on multiple occasions, Cardona acted contrary to the proper procedures even though, in many other instances, he demonstrated his ability to follow those procedures so as to properly exhaust his administrative remedies. For example, in addition to Warden Bledsoe's January 2011 response summarized above noting Cardona's failure to follow proper procedure, the record contains a Second Supplemental Declaration of L. Cunningham in which he verifies that Cardona's most recent four administrative remedies, which challenged aspects of the June 30, 2011 incident at USP Lewisburg, all were filed by Cardona at the Central Office level filed on April 9, 2012, and therefore were rejected as being filed at the wrong level and as untimely. (See Doc. 124-1, Cunningham Decl., at 1-2 ¶ 3; Doc. 124-1 at 11-12, SENTRY

printout.)

At bottom, where the record shows that Cardona successfully utilized the administrative

remedy procedure to fully exhaust some claims during the same time period that he claims

USP Lewisburg staff were thwarting his efforts to follow that procedure to exhaust other claims,

there is no logical or evidentiary basis to conclude that he was precluded from utilizing the

administrative remedy process. See Smith, supra, 406 Fed. Appx. at 581.[13]  Consequently,

there is no genuine issue of material fact as to Cardona's failure to exhaust administrative

remedies as to all but the five (5) claims set forth above, and Defendants therefore are entitled

to judgment as a matter of law as to all but those five (5) claims on the basis of failure to

exhaust administrative remedies.[14]

---

[13]In his brief in reply to Defendants' opposition to his Motion for an Evidentiary Hearing, Cardona argues that Smith "holds no water" because it is an unpublished opinion. (See Doc. 130 at 3.) We acknowledge that Smith is a nonprecedential opinion; yet, where the United States Court of Appeals for the Third Circuit has not issued a subsequent precedential opinion contradicting Smith, we find the analysis in Smith to be relevant and persuasive in our resolution of the issue of exhaustion of administrative remedies in the case at hand.

[14]On May 18, 2012, after the instant dispositive motion was fully briefed, Cardona filed a Motion for an Evidentiary Hearing on the issue of his exhaustion of administrative remedies. (Doc. 125.) Notwithstanding the fact that the time for Cardona to produce evidence to refute Defendants' evidence showing that he failed to exhaust administrative remedies was in his opposition to their dispositive motion, which he failed to do, in his Motion requesting an evidentiary hearing, Cardona merely reiterates his assertions that his efforts at exhaustion were thwarted and claims that affidavits by other inmates confirming these circumstances were destroyed. Where Cardona has not been able to produce any evidence showing that there is a genuine issue of material fact as to his failure to exhaust administrative remedies as to all but five (5) of his claims, there is no reason to hold an evidentiary hearing limited to this issue, and his Motion (Doc. 125) therefore will be denied.

## 2. Cardona's Claim Regarding Designation to the SMU

Cardona alleges that his designation to the Special Management Unit (SMU) at USP

Lewisburg was inappropriate because he has "a relatively perfect record of good interaction

with inmates in general." (Doc. 19, Amended Complaint, ¶ 5.) He also takes issue with the

bases for his referral, including his positive drug tests for opiates and his alleged gang

affiliation. (Id. ¶¶ 58-59, 73.) In particular, he alleges that Defendant Bracy lied when he stated

in referring Cardona to the SMU that he had confidential information that Cardona participated

in gang activity. (Id. ¶ 73.)

The BOP has sole discretion to determine where an inmate in its custody should be

confined as well as whether the transfer of an inmate among the various BOP institutions is

appropriate. 18 U.S.C. § 3621(b); Moody v. Daggett, 429 U.S. 78 (1976). The United States

Supreme Court has clarified in its decisions that the Constitution does not give rise to a liberty

interest in avoiding transfers to more adverse conditions of confinement. Olim v. Wakinekona,

461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976). This principle has

been followed in subsequent decisions in this Circuit holding that an inmate has no right to be

confined in any particular prison and also has no right to be transferred to any particular

institution. See Young v. Quinlan, 960 F.2d 351, 358 n. 16 (3d Cir. 1992); Flanagan v. Shively,

783 F. Supp. 922 (M.D. Pa. 1992) (McClure, J.), aff'd 980 F.2d 722 (3d Cir. 1992). The BOP

also possesses full discretion to determine the appropriate classification and treatment of the

inmates confined in its custody. 18 U.S.C. § 4081. Because this discretion has been conferred

on the BOP by Congress, it has been held that the federal courts should not be involved in the

day-to-day operations of the prison system, and in particular the monitoring and controlling of

prisoners, but instead, this area is better left to the expertise of prison administration

authorities.  Becker v. Smith, 554 F. Supp. 767, 770 (M.D. Pa. 1982) (citing Pugliese v. Nelson,

617 F.2d 916, 924 (2d Cir. 1980)).

With respect to claims by inmates relating to their placement in disciplinary housing, the

legal standards governing such claims recently were summarized by one of our sister courts as

follows:

> In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) the
> Supreme Court dramatically narrowed the range of liberty interests created by
> law and regulation. Prior to Sandin, courts reviewed the specific language of the
> pertinent law or regulation to determine whether the language was unmistakably
> mandatory in character such that it created a liberty interest. The Supreme Court
> announced a new rule in Sandin for determining whether a prisoner had a
> protected liberty interest created under statute or regulation by shifting the focus
> of inquiry from the specific language of the law or regulation to whether the
> deprivation suffered by the prisoner imposes an "atypical and significant hardship
> on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S.
> at 483 (emphasis added). [Following Sandin] [e]very court that has addressed
> this issue in Pennsylvania has determined that prisoners do not have a liberty
> interest in remaining free from confinement in the SMU or similar housing. See,
> e.g., Smith v. Dodrill, 2009 WL 62175 (M.D. Pa. Jan 8, 2009); Spencer v.
> Kelchner, 2007 WL 88084 (M.D.Pa. Jan.9, 2007); Dantzler v. Beard, 2007 WL
> 5018184 (W.D.Pa. Dec.6, 2007); Francis v. Dodrill, 2005 WL 2216582 (M.D.Pa.
> Sept.12, 2005). Cf. Johnson v. Hill, 910 F.Supp. 218, 220 (E.D.Pa.1996) (holding
> that, absent a state-created liberty interest that does not exist in Pennsylvania,
> prisoner placement is a matter of prison administration and a prisoner has no
> constitutional right to be placed in any particular cell or housing unit).

Brown v. Beard, No. 07–637, 2011 WL 1085890, *20 (W.D.Pa. March 21, 2011).

Cardona has failed to present any evidence to refute the factual record developed by Defendants showing that he was properly referred to the SMU program in accordance with BOP policy based upon his history of disruptive behavior and disruptive group affiliation. In his opposition brief, Cardona reiterates his arguments that there were improprieties in his SMU referral hearing and that he was placed into the SMU out of retaliation for his "First Amendment Freedom Fighting Activities".[15]  (See Doc. 112, Pl.'s Opp'n Br., at 9-11.)  However, these arguments fail to refute the record, which shows that Cardona met the criteria for referral to an SMU, including through his receipt of nine (9) disciplinary incident reports at USP Pollock, eight (8) of which were for prohibited acts of the "greatest severity", and the other of which was for a "high category" prohibited act, and information that the BOP "had documented Cardona a member of the 'Mexikanami' gang." (See Doc. 77 ¶¶ 10-17.)  Cardona also has failed to submit any evidence to refute the portions of the record showing that the procedures for referral to an SMU set forth in BOP P.S. 5217.01 were followed in his case.  (See Doc. 77 ¶¶ 42-60.)  Consequently, where Cardona's placement in the SMU Program does not implicate a liberty interest arising under the Due Process Clause, and where he has failed to produce any

---

[15]In his "Statement of Disputed Facts", Cardona states that he was referred for SMU hearing by Defendants Keffer and Townsend in retaliation for his freedom fighting activities and to interfere with a lawsuit he filed against Keffer. (Doc. 111 at 7 § J ¶ 47.)  In support of his statement, Cardona cites to a copy of the docket sheet in a § 1983 action he filed in the Western District of Louisiana where Keffer is named as one of seven defendants, and which he has submitted as an exhibit in this case. (See Doc. 112-1 at 24.)  The fact that Cardona filed a lawsuit, without more, does not serve as proof that he was referred to the SMU out of retaliation and/or to interfere with his litigation activities.

evidence to refute the record showing that he was appropriately referred to that Program, and all required procedures were followed in the referral process, Defendants are entitled to judgment as a matter of law as to Cardona's claim that his right to due process was violated as a result of his designation to the SMU Program.

### 3. Cardona's Claim Regarding Double Celling

Cardona alleges that he has been forced to reside in a double cell without adequate living space as required by ACA Standards 4-4128 and that the practice of forced double celling in the USP Lewisburg SMU amounts to cruel and unusual punishment because "there has [sic] been (7) murders stemming from cell fights due to inadequate living space plus hundreds of assaults" and because it is "extremely deleterious to Plaintiff's emotional, mental, and physical health." (Doc. 19, Amended Complaint, at 10-11.)

Double celling inmates is not per se unconstitutional. Rhodes v. Chapman, 452 U.S. 337, 352 (1981). However, double celling can amount to an Eighth Amendment violation if combined with other adverse conditions. Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996). In determining whether an Eighth Amendment violation has occurred, a court must consider the totality of the circumstances bearing on the shelter provided. See Union County Jail Inmates v. Di Buono, 713 F.2d 984, 999, 1000-01 (3d Cir. 1983). Considerations relevant to this determination "include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic

31

physical facilities such as plumbing, ventilation, and showers." <u>Nami</u>, 82 F.3d at 67.

Cardona's claim is that double celling in the USP Lewisburg SMU is unconstitutional because it violates ACA standards. In opposing Defendants' request for summary judgment on this issue, Cardona argues that there is a genuine issue of material fact as to his double celling claim because he alleges that, in moving for summary judgment, Defendants have failed to provide any affidavit, or to refute or present any material facts regarding this claim. (<u>See</u> Doc. 112, Pl.'s Opp'n Br., at 2.) Contrary to Cardona's argument, Defendants have produced evidence that, following an audit, which included a condition of confinement analysis, USP Lewisburg received re-accreditation from the ACA on August 8, 2011.[16] Cardona has failed to produce any evidence that, despite the fact that the practice of double celling at USP Lewisburg did not prevent its receipt of re-accreditation, the conditions of confinement nonetheless result in a violation of his Eighth Amendment right to be free from cruel and unusual punishment. Cardona attempts to make this showing by submitting affidavits from inmates confined in the SMU at USP Lewisburg describing instances in which they were disciplined after they "refused" to return to their double cell assignments. (<u>See</u> Doc. 112-1 at 3-11, Exs. 3-11.) The mere fact that these inmates claim in these affidavits that their discipline was a result of their refusal to

---

[16]In his "Statement of Disputed Facts," Cardona states that he wrote to the ACA to inform them that the Lewisburg SMU is not in compliance with ACA standard 4-4128, and, in support of his statement, he cites to a copy of his letter to the ACA, dated June 19, 2011, that he has submitted in this case as an exhibit. (Doc. 111 at 4 § E (citing Doc. 112-1 at 34-35).) The fact that Cardona wrote to the ACA to object to USP Lewisburg's re-accreditation does not serve as evidence that conditions at USP Lewisburg are not in compliance with ACA standards.

accept the practice of double celling in no way proves that any double celling that occurs at the

USP Lewisburg SMU is unconstitutional.  If these affidavits are proof of anything, it is that, in

instances in which inmates fail to follow staff orders at USP Lewisburg, they are disciplined,

which would be consistent with BOP Policy.  Moreover, to the extent Cardona claims that there

are sufficient other adverse conditions that he has alleged that, when combined with the

practice of double celling, amount to a constitutional violation (see Doc. 112 at 6-7), he has not

presented any evidence to support his allegations.  Therefore, we find that Defendants are

entitled to judgment as a matter of law as to Cardona's double celling claim.

### 4.    Cardona's Claim Regarding Visual Searches

In his Amended Complaint, Cardona alleges that, on June 1, 2010, Defendant B. Trate

subjected Cardona and his cellmate to an unlawful visual search to harass and cause

psychological torture.  (Doc. 19, Amended Complaint, at 27 ¶ 115.)  In support of their request

for judgment as a matter of law on this issue, Defendants have produced evidence that BOP

P.S. 5521.05 authorizes visual searches "where there is reasonable belief that contraband may

be concealed on a person, or a good opportunity for concealment has occurred."  (Doc. 77 ¶

21; Doc. 76-7 at 22 ¶ 4; BOP P.S. 5521.05.)  Defendants also have submitted the relevant

portions of the log book maintained by staff for visual searches performed in the USP

Lewisburg SMU, which reveals that Cardona was visually searched on May 4, 2011 and May 9,

2011, and reflects that those searches were not performed by B. Trate, but rather were

conducted by staff members Gemberling, on May 4, and Good, on May 9.  (See Doc. 76-7 at

22-23, Ex. 2, Trate Decl.; Doc. 76-7 at 30, 31, Visual Log Book Entries, at 32-33, Log Book Record.)

Civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). The evidence submitted by Defendants establishes that, on the two occasions on which Cardona was visually searched, the searches were not conducted by Defendant Trate. In his opposition brief, Cardona suggests that Trate has sufficient personal involvement in the visual searches that occurred because he allegedly issued a memorandum directing that all inmates in Z-block with "3-Man Lieutenant Hold Status" be strip searched both on the way to and returning from recreation. (See Doc. 112 at 15.) Cardona then alleges that, because Trate has failed to produce this memorandum he "apparently is trying to cover up this misconduct of unlawful harassing strip searches." (Id.) However, Cardona's allegation that Trate authored a memorandum, regardless of whether or not that is true, is insufficient to controvert Defendants' evidence, which establishes that Trate had no personal involvement in the visual searches of Cardona, and therefore, Trate is entitled to judgment as a matter of law as to Cardona's visual search claim.

### 5.    Cardona's Claim Regarding Inadequate Law Library Access

In his Amended Complaint, Cardona alleges that his placement in the USP Lewisburg SMU resulted in a denial of his access to legal research. (Doc. 19 at 20 ¶ 85.) Defendants have submitted evidence that Cardona properly exhausted an administrative remedy in which he requested additional law library time and construed his claim in his Amended Complaint that he was denied access to legal research to encompass that claim. (See Doc. 76-1, Cunningham Decl., at 5 12.) We agree with Defendants' interpretation.

Prison inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. In Lewis v. Casey, 518 U.S. 343 (1996), the Court clarified that "[t]he tools [Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." 518 U.S. at 355.

In order to sustain a claim for denial of the right of access to the courts based on an inadequate law library, an inmate must allege an "actual injury" to his litigation efforts; to establish actual injury, an inmate plaintiff must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. Id. at 349; see also O'Connell v. Williams, 241 Fed. Appx. 55, 57 (3d Cir. 2007). In other words, "an inmate cannot establish a relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis, 518 U.S. at 351. This pleading requirement of actual injury

stems "from the doctrine of standing, a constitutional principle that prevents courts of law from

undertaking tasks assigned to the political branches . . . It is the role of courts to provide relief

to claimants . . . who have suffered , or will imminently suffer, actual harm . . . ." Id. at 349.

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court held that, in order to

state a claim for denial of access to courts, a party must identify all of the following in the

complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and

3) a remedy that may be awarded as recompense that is not otherwise available in a future

action. Christopher, 536 U.S. at 415. Accordingly, in order to be successful on a right of

access to the courts claim, a plaintiff must plead that he lost an opportunity to file a case in

court and that he could not subsequently file that case after the interference with the right of

access to the court ceased. Id. The Supreme Court in Christopher observed that the "very

point of recognizing any access claim is to provide some effective vindication for a separate

and distinct right to seek judicial relief for some wrong . . . . the right [of access to the courts

claim] is ancillary to the underlying claim, without which the plaintiff cannot have suffered injury

by being shut out of court." Id. at 414-15.

In the instant case, Defendants have submitted evidence demonstrating that while

access to the law library by inmates in the SMU is more limited than that of inmates in the

general population as a result of the lock-down nature of that program, usage report logs for the

ELL reveal that Cardona had regular access to the ELL as demonstrated by the fact that he

signed onto the ELL System for significant periods of time from March 25, 2010 through

October 7, 2011. In opposing Defendants' Motion, Cardona attempts to establish that the law

library is only occupied 85% of the time. Specifically, in his "Disputed Statement of Facts",

Cardona agrees that inmates are instructed to submit a request to use the ELL to the block

officer, but states that the law library is empty and not in use 85% of the time, and cites to the

declaration of an inmate whose cell is outside of the law library stating as such. (See Doc. 111

at 6 § H ¶ 37 (citing Doc. 112-1 at 32).) Regardless of the truth of Cardona's statement

concerning the percentage of time in which the law library is in use, he has failed to submit any

evidence to counter the BOP records submitted by Defendants showing his regular usage of

the ELL. Perhaps more significantly, Cardona has failed to submit any evidence of any actual

injury as a result of any alleged limitation on his usage of the law library, and no such injury is

evident from the record in his case, which shows that Cardona has regularly corresponded with

the Court in this action, and either has met filing deadlines, or has submitted timely requests for

extensions of time. Consequently, Defendants are entitled to judgment as a matter of law as to

Cardona's claim that he was not afforded adequate access to the law library in the USP

Lewisburg SMU.

### 6. Cardona's Claim Regarding March 15, 2010 Incident

In his Amended Complaint, Cardona alleges that Defendants forced him into a "staged

gladiator type fight" which resulted in an Incident Report dated March 15, 2010 and which

violated his rights under the Eighth Amendment. (Doc. 19 ¶¶ 89-96, 158.)

As set forth in the foregoing Statement of Facts, Cardona received disciplinary incident

report # 1991132 as a result of an incident on March 15, 2010 charging him with Fighting with

Another Person in violation of Code 201. (Doc. 77 ¶ 6; Doc. 76-1 at 17-37, DHO Packet.)

Cardona's DHO hearing on this incident was held on May 11, 2010, and the DHO concluded

that Cardona committed the prohibited act as charged. (Doc. 77 ¶ 7; Doc. 76-1 at 18-22, DHO

Report.) Cardona was sanctioned to twenty-seven (27) days loss of good conduct time; thirty

(30) days disciplinary segregation; and ninety (90) days loss of commissary and visiting

privileges. (Doc. 77 ¶ 8; Doc. 76-1 at 18-22.)

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court ruled that a

constitutional cause of action for damages does not accrue "for allegedly unconstitutional

conviction or imprisonment, or for other harm caused by actions whose unlawfulness would

render a conviction or sentence invalid," until the plaintiff proves that "the conviction or

sentence has been reversed on direct appeal, expunged by executive order, declared invalid by

a state tribunal authorized to make such determination, or called into question by a federal

court's issuance of a writ of habeas corpus." Id. at 486-87. This holding has been referred to

as the "favorable termination rule." See Torres v. Fauver, 292 F.3d 141, 147 (3d Cir. 2002).

The favorable termination rule has been applied to bar claims under Bivens as well as under §

1983. See Lora-Pena v. FBI, 529 F.3d 503, 506 n.2 (3d Cir. 2008).

In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the rationale

in Heck to disciplinary proceedings, holding that the expungement of the inmate disciplinary

proceeding would imply the invalidity of the underlying disciplinary action: "[t]he principal

38

procedural defect complained of by the respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." Edwards, 520 U.S. at 646. Accordingly, an inmate may not bring a civil rights action for declaratory and injunctive relief related to an inmate disciplinary proceeding without first challenging and overturning, via appropriate proceedings, the disciplinary hearing in question. Id. at 646-47. In Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original), the Court explained that "a state prisoner's § 1983 action is barred (absent prior invalidation)- *no matter the relief sought* (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)- *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration."

In the instant action, Cardona seeks compensatory, punitive, and nominal damages jointly and severally against all Defendants as to all of his claims. (Doc. 19 at 40-41.) In opposing the instant Motion, Cardona argues that his claim stemming from the March 15, 2010 Incident Report is not Heck-barred because he is not challenging the length or duration of his confinement, but instead only is challenging the conditions of his confinement. (See Doc. 112 at 7-9.) In support of his argument, he cites to Muhammad v. Close, 540 U.S. 749 (2004) and Doe v. Pennsylvania Bd. of Probation and Parole, 513 F.3d 95 (2008). (See id. at 8.) Muhammad involved a challenge to disciplinary proceedings that did not result in a loss of good conduct time, and therefore, the Court found that Heck was not implicated. In Doe, the issue was whether the proper method for a parolee to challenge the conditions of parole is via a

§ 1983 civil rights action or a petition for writ of habeas corpus. Inasmuch as Cardona was sanctioned with the loss of good conduct time as a result of his having been found guilty of the disciplinary incident that forms the basis for Cardona's claim, the holdings of Muhammad and Doe are inapplicable. Furthermore, it is evident that success on Cardona's claim regarding the March 15, 2010 incident necessarily would invalidate the finding that he was guilty of misconduct with respect to this incident. Where Cardona filed a petition for writ of habeas corpus with this Court alleging that his right to due process was violated during the disciplinary proceedings that ensued after the March 15, 2010 incident, and his petition was denied, he cannot demonstrate that the guilty finding has been invalidated. See Cardona v. Bledsoe, Civil No. 4:10-CV-2269, Doc. 8, 2011 WL 2690002 (M.D. Pa. July 6, 2011) (Munley, J.).[17] Because Cardona's disciplinary action has not been invalidated, it is apparent that his claim stemming from the incident that formed the basis of that action is barred by Heck, and that Defendants therefore are entitled to judgment as a matter of law as to this claim.

## V.    Other Pending Motions

---

[17]We note that, while the docket in Civil No. 4:10-CV-2269 reflects that Cardona has two appeals to the United States Court of Appeals for the Third Circuit pending from orders entered in that case, neither of the appeals is directly from the July 6, 2011 Memorandum and Order denying Cardona's petition for writ of habeas corpus. Rather, the first appeal, filed on March 26, 2012 and docketed in the Third Circuit at No. 12-1858, is from the Court's November 28, 2011 Memorandum and Order denying Cardona's motion for reconsideration from the denial of his habeas petition. The second appeal, filed on July 5, 2012 and docketed in the Third Circuit at No. 12-2898, is from the Court's June 19, 2012 Memorandum and Order denying Cardona's motion for reconsideration from the Court's denial of his motion to extend the time for filing an appeal under the provisions of Fed. R. App. P. 4(a)(6).

Also pending are Cardona's Motion to Compel (Doc. 106), Motion for Partial Summary

Judgment (Doc. 114), Motion to Compel Defendants to Allow Plaintiff to Prepare Documents

Via Electronic Means (Doc. 120), and Motion for an Evidentiary Hearing (Doc. 125).

In his Motion to Compel, filed on March 7, 2012, Cardona requests that this Court

compel Defendants to produce documents he requested in a Request for Production of

Documents dated December 26, 2011 (see Doc. 106-1 at 5-9), which was after Defendants

filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on October

31, 2011. In light of our determination that Defendants are entitled to judgment as a matter of

law as to all issues in this case, there is no basis to compel them to produce any of the

documents Cardona requested, and therefore, this Motion (Doc. 106) will be denied as moot.

In his Motion for Partial Summary Judgment, filed on March 26, 2012, Cardona requests

the entry of partial summary judgment on his claim relating to alleged Administrative

Procedures Act violations. (Doc. 114.) This claim is among the claims that we have

determined were unexhausted by Cardona and as to which judgment as a matter of law will be

entered in favor of Defendants, and therefore, Cardona's Motion will be denied accordingly.

In a Motion filed on April 17, 2012, Cardona renewed his previously denied request to

compel Defendants to permit him to prepare documents relating to this action via electronic

means. (Doc. 120.) His previous request was denied by Memorandum and Order dated

December 28, 2011. (Doc. 89.) In light of the fact that judgment will be entered in favor of

Defendants, and this case will be closed, Cardona's request for the ability to prepare

41

documents relating to this action via electronic means is entirely moot and will be denied accordingly.

On May 18, 2012, after Defendants' dispositive motion was fully briefed, Cardona filed a Motion for an Evidentiary Hearing on the issue of his exhaustion of administrative remedies. (Doc. 125.)  As discussed in note 14, supra, this Motion will be denied.

## VI.   Conclusion

For the foregoing reasons, the Motion to Dismiss filed on behalf of Defendants will be granted to the extent that the claims against Defendants Lappin, Watts, Keffer, Townsend, Bracy, Maldonado, and Dodrill will be dismissed for lack of personal jurisdiction, and the Motion for Summary Judgment will be granted as to all remaining Defendants.  In addition, Cardona's Motion to Compel (Doc. 106), Motion for Partial Summary Judgment (Doc. 114), Motion to Compel Defendants to Allow Plaintiff to Prepare Documents Related to this Action Electronically (Doc. 120), and Motion for Evidentiary Hearing (Doc. 125) will be denied.  An appropriate Order will enter on today's date.

Robert D. Mariani
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSE CRISTOBAL CARDONA,    :    CIVIL NO. 3:CV-11-0054
            Plaintiff,   :

                   :    (Judge Mariani)

        v.         :

                   :

B.A. BLEDSOE, et al.,       :
            Defendants  :

## ORDER

**AND NOW,** to wit, this *20th* **DAY OF SEPTEMBER, 2012,** for the reasons set forth in the Memorandum issued on today's date, **IT IS HEREBY ORDERED AS FOLLOWS:**

    1.    Defendants' Motion to Dismiss and for Summary Judgment (Doc. 68) is **GRANTED**.

    2.    The claims against Defendants Lappin, Watts, Keffer, Townsend, Bracy, Maldonado, and Dodrill are **DISMISSED** for lack of personal jurisdiction.

    3.    The Clerk of Court is directed to **ENTER** judgment in favor of all remaining Defendants and against Plaintiff.

    4.    All other pending Motions (Docs. 106, 114, 120, 125) are **DENIED**.

    5.    The Clerk of Court is directed to **CLOSE** this case.

    6.    Any appeal from this Order is **DEEMED** frivolous and not in good faith. <u>See</u> 28 U.S.C. § 1915(a)(3).

Robert D. Mariani
United States District Judge